## WELD v. CHAPMAN.

The grant of a franchise by the state, cannot extend beyond her own limits.

The state of Iowa could not grant a ferry right, which would operate, or confer any rights, on the territory of the state of Wisconsin.

Still less does such a grant, authorize the grantee to transport passengers from the Wisconsin to the Iowa side of the Mississippi river.

So, a similar grant by Wisconsin, gives no authority on the Iowa shore, and confers no right to transport from the Iowa side.

Section twelve of the act entitled "An act to regulate ferries,".approved February 16, 1843, which provides, that no license shall be granted to keep a ferry on said Mississippi river, within two miles of any other licensed or chartered ferry, applies only to licenses and charters granted under the authority of this state.

Such restrictions in the statutes of a state, have reference to its own acts, and not those of other states, unless the language be express, or the construction essentially necessary.

Any person has a right to transport himself and property over a river, in his own boat, although there may be a ferry at the place where he crosses; but if he makes this right a cover for carrying travelers, it then becomes an infringement of the ferry right.

The transportation of passengers in a mail coach, is not embraced in a contract for carrying the mail, but is an independent matter of private speculation and benefit.

*Appeal from the Dubuque District Court.*

THIS action is brought to recover damages for an infringement of a ferry right. Weld had a license, granted in 1850, and renewed in 1851, by the board of commissioners of Dubuque county, Iowa, to ferry across the Mississippi river, from a point called Weld's ferry, in Iowa. This was in force from July, 1850, to July, 1852. Chapman held a license, granted in 1849, by the county court of Grant county, in Wisconsin, for the term of three years, from the 24th of August, 1849, to ferry from the landing at the town of Potosi, in Wisconsin, across the Grant and Mississippi rivers. It appears that, in general, each transported from his own side of the river. But it farther appears that in 1850 and 1851, Chapman was a carrier of the United States mail, and that

he conveyed the mail coaches, with the mail and passengers, in his boats, from the above ferry landing on the Iowa side, to the Wisconsin side; and that he received a certain sum for conveying passengers from Dubuque (the town) to Potosi and beyond; but it was not shown, that he received anything from the passengers specifically as ferriage.

Weld sues Chapman, for an infringement of his rights in the ferry from the Iowa shore. It appears, that in crossing the river, the parties' boats pursued substantially the same course, and landed at the same points on each side. The defendant contended, and asked the court to charge the jury, that Weld had not such an exclusive right, as would enable him to maintain an action for carrying the passengers in the mail coaches as aforesaid, especially, if the jury believe, that he received no ferriage as such, for crossing said passengers, but only received a gross sum as aforesaid. He also asked the court to instruct, that the defendant, having a prior right there to ferry, Weld had no right to keep on, and to transport passengers, and that if he did, the defendant could recover from him. He also requested the instruction, that having a prior right, as aforesaid, he had a right to carry passengers both ways, by virtue of the laws of Wisconsin. The court refused to give these instructions, and the defendant excepted.

*Smith, McKinlay & Poor*, for the appellant, contended:

1. The board of commissioners were expressly prohibited, from granting another ferry, within two miles of any licensed or chartered ferry. See statute 1843, 267.

2. Concurrent jurisdiction is expressly given to Wisconsin and Iowa, on the waters of the Mississippi. Code, § 3; Act of Congress, admitting Iowa, Code, 538; Const. of Wisconsin, Rev. Statutes, 33.

3. Chapman had an exclusive charter from Wisconsin, for Grant river, and the Mississippi. See Acts of 1846, 128; *Jones* v. *Johnson*, 2 Ala. 746; *State* v. *Cameron*, 2 Chandler, 172.

4. Chapman should have damages allowed to him, for the

Weld v. Chapman.

interference with his exclusive right by Weld, and as Weld had no right, he should maintain no action.

*Burt & Barker*, for the appellee, cited the following : 2 Bouv. Ins. 86 ; 6 Peters, 709 ; *In the Matter of Ferguson, a soldier of the U. S. Army*, 9 Johns. 239 ; Story's Conf. of Laws, 28 ; Ohio Statutes, 430 ; 1 Kent's Com. 428 ; 7 Grattan, 230.

WOODWARD, J.—The defendant claims, first, an exclusive right to ferry at that place ; second, at least, a right to ferry both ways ; or third, a right to transport the mail coaches, with the passengers therein.

The grant of a franchise by the state, cannot extend beyond her own limits. She grants such rights as she may lawfully give, and no more ; nothing beyond the state limits is contemplated. This is true of grants of a territorial nature, at least ; or of those to be exercised on given ground. A ferry is mainly in respect to the landing, not of the water ; therefore, this state could not grant a ferry right which should operate on the Wisconsin shore. The right to land there, does not depend on the ferry franchise granted by Iowa, and still less does a ferry right, under the authority of Iowa, authorize the person licensed, to transport passengers from that side to this. That power belongs to Wisconsin.

So, on the other hand, a similar grant by Wisconsin, gives no authority on the Iowa shore ; and it gives no right to transport from the Iowa side. *Ross* v. *Page*, 6–7 Ohio, 76 ; *Somerville* v. *Wimbish*, 7 Grat. 205, 230 ; *Memplus* v. *Overton*, 3 Yerg. 387 ; Story's Confl. L. § 20. The defendant, therefore, had not an exclusive right to ferry at the place named ; nor has he, by virtue of his Wisconsin license, a right to ferry from the Iowa shore.

But the defendant contends, that the plaintiff's license is not valid, for that it is contrary to the statute of 1843, which enacts that no license shall be granted to keep a ferry on said Mississippi river, within two miles of any other licensed or chartered ferry. Rev. Stat. 267. He claims that as his

right, granted in Wisconsin, was prior to the plaintiff's in Iowa, the latter comes under this prohibition. We do not think so. The language of the statute must be construed in relation to licenses and charters under the authority of this state. Such terms in the statutes of a state, refer to its own doings, and not those of other states, unless the language be express, or the construction essentially necessary. And this is indicated by the next sentence of the same section, in immediate connection with the foregoing words—" provided this act shall not be so construed, as to extend the present chartered limits of any ferries on the Mississippi river." The one sentence may as well be applied to licenses granted in another state, as the other.

The only other question is, whether the case is changed by the fact, that the defendant was a carrier of the mail, and was transporting the mail coach and the passengers. We understand the case to mean, that he was a contractor to carry the mail from Dubuque to Potosi, or beyond that. Any person has the right to transport himself over the river, in his own boat, although there may be a ferry at the same place. So, also, may he do with his own horse, or other team, and his carriage. But, if he makes this a cover for carrying travelers, it then becomes an infringement of the ferry right. And it would hardly seem, that the essence of the matter, consisted in taking pay or toll ; for then, one vindictively disposed, might be willing to make a sacrifice, for the sake of ruining the franchise of another. This every one has seen practiced, in one form or another. The defendant, in the same manner, might transport his teams and coaches. But this right does not depend upon his being the holder of a ferry license, nor upon his being the carrier of the mail. He has the right, independently of these facts; but when he makes these private or individual rights, the medium or the cover of conveying travelers, whose custom legally belongs to the plaintiff, he cannot sustain his position, any more than another individual who does the same thing, under any other pretence. The copy of the defendant's license in the bill of exceptions, is accompanied by a

table of rates of tolls, from which it appears that when a carriage passes, he may charge twelve and a-half cents additional for each person therein, after the first person. Now, although he does not charge the passenger's ferriage as such, yet it is fair to presume, that his charge for transportation from Dubuque to Potosi or elsewhere, embraces this item to a greater or less extent. And thus he obtains the same benefit under another name; and even if he does not, it is the same thing, if he deprives the other of that which belongs to him. This may be inconvenient, but it only manifests the necessity of an amicable arrangement. The power or right which the defendant claims, can be conceded to him, only by taking a ground which would enable one to destroy the franchise of another, if he were willing to do it at a sacrifice to himself, and instances of the kind, are not unknown. The transportation of passengers, is not embraced in defendant's contract for carrying the mail, but is an independent matter of private speculation and benefit.

The judgment of the District Court is affirmed.