## HUNTER v. MOORE.

FERRIES:    *Infringement of franchise by private crossings.*

A ferry license under our statute does not give the grantee the right to enjoin citizens from using their own boats upon the stream for a mile above and below, in crossing themselves, their families, employes, guests, or occasionally a friend, at their will, or occasionally lending their boats to each other; but in using his banks for landings except at a public highway, and in crossing his land to reach their boats, they become liable at law as trespassers for injury to his land.

APPEAL from *Randolph* Circuit Court in Chancery.
Hon. J. G. FRIERSON, Circuit Judge.

*W. F. Henderson* for appellant.

1. As to the exclusive rights of the owner of a ferry franchise, see *Gantt's Digest, section 2923.* While appellees did not pretend to keep a *public ferry*, they did keep a *private one*, which is within the spirit and policy of the statute.

Only bank owners have the right. *Sec. 2904 Gantt's Digest; 25 Ark., 28.*

Appellees had no right of entry or way on or over appellant's lands even in cases of absolute necessity. They were trespassers. Trespasses which from long continuance have grown into a nuisance may be enjoined. *6 Vesey, 107; 7 Ib., 305; High on Inj., secs. 466, 473, 475.*

The public can claim no easement by *prescription.* No grant can be presumed to *all mankind.* There is no common law right to make use of the banks of a stream in navigating it. *3 Tenn., 2; 5 Barn. & Ald., 268; 3 Kent's Com., 417; 6 Peters, 436; 20 Wend., 111; 14 Bab., 511; Washburn Eas. and Serv., p. 485; 1 Me., 111.*

On the application of a riparian owner the proprietor of a ferry will be enjoined from landing his boat on the lands of such owner. *18 Iowa, 367; 18 Ib., 327.*

See, also, *36 Ark., 466; 20 Ib., 561; 23 Ib., 514; 25 Ib., 28.*

EAKIN, J. Appellant, Hunter, having a ferry franchise over Black river, and owning the banks for a considerable distance above and below, filed this bill against Moore and about a dozen others, alleging :

That they had combined for the purpose of avoiding the payment of his proper fees, and to impair the value of his franchise; that they had bought, or leased a great many skiffs and other small water crafts, and were using them in crossing the river within a mile of his ferry, and in going to and from the skiff landings, were passing over complainant's lands; and were doing that so frequently and continuously that he could not have adequate compensation in damages at law. Further, that they were using said boats for their own profit, without any license, and

were daily diminishing the income of the ferry by diverting or preventing its receipt of proper tolls.

The object of the bill was to enjoin the defendants from the use of the skiffs, etc., within a mile of the ferry landing, and from committing any further trespass upon the lands, and from landing their crafts on complainant's banks, and for general relief. On the bill, supported by affidavits, an interlocutory injunction issued as prayed.

The defendants afterwards filed a demurrer and answer, with a motion to dissolve the injunction. They insist upon their right to navigate the river, which is a navigable stream, and to land upon the banks on either side; and deny that they have confederated together, or with other persons, for the purpose of transporting persons across the river, or that they procured the boats, etc., for that purpose. They admit that each of them has a skiff, or canoe, or "dug out" for his private use, and not held as common property, and that each one uses his own in navigating the water for his own benefit in fishing, hunting, recreation and attending to his own business. They deny transporting persons and property, save their own effects and themselves, their families, servants and household guests. They admit landing upon the banks on such occasions as it had been a custom for the citizens to do ever since Pocahontas, the neighboring town, was located. And they aver that it had been the custom during that time for citizens to land their boats at pleasure upon either bank of the river, of which custom complainant had thirty years' notice.

They also plead that the right of the citizens to navigate the river has been settled by a decree of that court at a former term, on a bill by the same complainant to enjoin them.

Depositions were taken, and upon hearing, the court found the complainant was entitled to his ferry franchise,

Hunter v. Moore.

and that it was exclusive for a mile up and down. But that defendants and all other citizens have the right to cross themselves, property, families and any members thereof at all times, in their own crafts, and with their servants, either on their own business, or for their pleasure, recreation or sport, and to land their water crafts on either bank of the river, at any convenient point at will; provided, they should in no wise trespass upon, or pass through or over any of the premises of complainant, except in cases of absolute necessity. The injunction was accordingly modified so as to prohibit defendants from crossing any person or thing within the limits of the ferry franchise (to wit, one mile each way), except as above mentioned. From this complainant appealed.

We need not consider whether the injunction was right *Infringement of ferry franchise by private crossings.* so far as it went. That concerns the defendants, who are content. The question is whether the defendants should have been prohibited from transporting *any* persons or property in their boats, and from landing upon the banks of complainant, and from passing over his lands, whether from necessity or not.

With regard to the last point, it may be disposed of in passing. All that this case determines is, that the court declines to enjoin defendants from passing over or entering upon the lands of complainant when they may be required to do so by absolute necessity. That goes far enough for a court of equity. If they have no right to do that at law, and under pressure of an absolute necessity commit a trespass, it is enough that he be left to the judgment he may be able to get at law. No irreparable damage is done to land by walking over it, or by tying a boat to the bank; nor is it *prima facie* a nuisance if oft repeated. It would be misleading to consider this case at all as one to prohibit nuisance to the land itself. It may be conceded that

no one has a right of way over the lands of another to reach a navigable stream, and that if he does so pass over, he may be mulcted in damages, real or nominal, as the proof may justify; but *non sequitur* that a court of equity should enjoin him from doing so, whatever may be his necessity.

The real grievance is not that the *lands* are injured, or that the complainant is incommoded in the enjoyment of them, but that his *franchise of ferriage* is impaired in value by the use of their own boats, by defendants, in crossing the stream to and fro. The real question is, whether the ferry license, under our statutes, gives the grantee the right to prohibit citizens from using their own boats upon the stream for a mile above and below, crossing themselves, their families, employes, guests, or occasionally a friend, at their will, or occasionally lending their boats to each other. This is all the evidence shows was done. There is no evidence of any confederation amongst them, nor of any compensation ever taken, nor of any offer to the public for free use in passage. Whether or not either or all of these things would be considered as impairing the franchise, may well be waived, as they need not be here decided.

A ferry franchise is a privilege to take tolls for transporting men, horses, cattle and vehicles, with or without their loading, across a lake or stream, or some other body of water. Except in the mode of transporting, it differs in no essential from a bridge franchise. Both are for the same purpose, that is to get men, cattle and vehicles across a stream.

Duties are imposed which are the consideration of these tolls. They are familiar—one being that of being always prepared to transport persons and property of any one, when called upon to do so, at reasonable times.

Hunter v. Moore.

Our statute simply provides that where this franchise has been granted, a similar franchise shall not be granted to any one else within a mile along the stream. That is to say, no one else shall be authorized to take tolls, or exercise any power, or right depending upon such a grant. It cannot be said that the grant of this franchise to any one, takes away from a citizen within the prescribed limits any right which before that he had of common right.

The grant of a ferry license does not impose upon every other citizen or traveler the burden of using the ferry and paying the toll, if he would cross the stream at all within one mile of the ferry. The franchise has no affinity with such old rights as were sometimes given by custom in England, like that of an ancient mill, at which all the inhabitants of a particular district were compelled to have their corn ground for toll. The ferry must be kept open to the public, and those who use it must pay toll, but any one may nevertheless get across the stream as he pleases and as often as he pleases, whether the waters be high or low. It may not be said that, at low water, a man violated a ferry franchise by fording, or by showing others a ford. Still it would impair the income of the ferry. That would be "*damnum absque injuria*."

Nothing partakes of the nature of a ferry franchise which is not for the accommodation of the public. In the case of the *Enfield Toll Bridge Co. v. The Hartford & New Haven Railroad Co.*, *17 Conn., p. 40*, the court, quoting *Hargrave's Law Tracts, ch. 2, p. 6*, says: "It is a well settled principle of common law, that no man may set up a ferry, for all passengers, without prescription time out of mind, or a charter from the king. He may make a ferry for his own use, or the use of his family, but not for the common use of all the king's subjects passing that way."

Hunter v. Moore.

Then comes also into the case now in judgment the fact,. that Black River is a navigable stream, and that all persons have the right to use it as such, for fishing, hunting, recreation or what not, and to keep upon it such boats as they may please, and at least to carry their own families, servants and property. This is as far as the injunction leaves open to them, but it is obvious, upon principle, that they would not be excluded from extending courtesies to guests and particular friends, provided they did not extend to the general public. To do this is not really to impede the exercise of a ferry franchise in another or impair its value. The value of the franchise depends upon the right to transport such of the general public as may use the convenience, and not upon any right to compel those to use it who do not require it. The court did not err in declining to enjoin defendants from transporting *any* persons or property whatever. They had never offered any facilities to the public for this purpose, and if the court erred on this point it was in granting any injunction at all.

It seems from the authorities that although in those States formed out of the former Louisiana Territory, a greater freedom is allowed in the use of the banks of a navigable stream than is recognized as permissible by the general law obtaining in other States, yet that it would not give those navigating the stream the absolute right to land at pleasure upon private property. The subject is considered with this result in *O'Fallon, exr. of Mullanphy, v. Daggett & Price, in 4 Mo., p. 343.* The right to touch the bank and make fast thereto, and to use it for repairing, etc., is confined to cases of reasonable necessity, and as incidental to the right of navigation by boats passing up and down the stream, and temporarily delayed. The public has no general right to use the property of the bank-owners for landing at will and for mooring boats.

Hunter v. Moore.

We conclude then that the defendants in using the banks of the complainant, and in passing over his lands, were simple trespassers, but that they were in no sense interfering with his ferry franchise. The injury, if real, was simply to the land itself, and the case stands in no better attitude than if he had brought the action for that directly, without any reference to his ferry. The right of the defendants to cross and recross the river with their boats, and to land at the public highway, or upon any other lands than defendant's, is as to him clear and well settled.

If the damage done to the real estate by trespassers be not real, and of such a nature as to give some peculiar reason for equity interference, the parties should be left to their remedies at law. This case does not come within the purview of the principle that authorizes an injunction to prevent multiplicity of suits, any more than in a case where different persons, without combination to assert a common right, had committed, or were about to commit, distinct trespasses. It does not appear that the landing of the boats amounted to a nuisance. If he does not wish to extend that privilege to his neighbors, but desires to force them to choose between more inconvenient landings and the burden of his tolls, the machinery of the law courts seems ample. We think the Chancellor would not have abused his discretion in denying the injunction wholly, and did not do so to complainant's injury, in making it perpetual, as modified.

Affirm.