[Sac. No. 2054. In Bank.—April 4, 1913.]

# VALLEJO FERRY COMPANY (a Corporation), Respondent, v. SOLANO AQUATIC CLUB, Appellant.

FERRY FRANCHISE—POWER OF CITY OF VALLEJO TO GRANT—CASE APPROVED.—The case of *Vallejo Ferry Company* v. *Lang & McPherson*, 161 Cal. 672, is approved and followed, to the effect, that the city of Vallejo had the power to grant the ferry franchise, acquired by the plaintiff under a municipal ordinance in 1896, for the operation of a ferry over the navigable waters of Napa Creek, between the city of Vallejo and that certain territory, situated within the corporate territorial limits of the city, owned by the United States government, abutting upon such navigable waters and known as Mare Island.

ID.—FERRY BETWEEN VALLEJO AND MARE ISLAND—TERMINUS ON FEDERAL TERRITORY.—The limitation upon the power of the city of Vallejo to grant ferry franchises, whose termini shall be within the limits of the city, is not abused nor violated by reason of the fact that the Mare Island terminus is upon land over which the United States exercises exclusive jurisdiction.

ID.—FERRY FRANCHISE IS EXCLUSIVE—PRIVATE RIGHTS NOT INVADED.—The franchise so granted to the plaintiff is an exclusive franchise within the meaning of the law, and especially within the limitation of section 2853 of the Political Code, which forbids the erection and operation of a second toll-bridge or ferry within one mile above or below a regularly established toll-bridge or ferry, unless public convenience renders necessary the franchise for a second bridge or ferry. The making of the grant so exclusive, is not an invasion of private rights, nor a bestowal of monopolistic, special privileges, nor an interference with the free right of navigation, and it is the duty of the government to safeguard the rights so bestowed, and to see that the enjoyment of those rights is co-extensive with the grant of them.

ID.—TERMINUS ON FEDERAL TERRITORY DOES NOT DESTROY FRANCHISE.—The fact that the Mare Island terminus of the ferry is upon territory owned by and subject to the jurisdiction of the United States does not in the least militate against the validity or legality of the franchise itself, whatever effect it may have upon the value of the franchise. This is so, even if it be conceded that the United States government would have the power to forbid the ferry boats of the owner of the franchise from landing upon the island.

ID.—REVOCABLE PERMIT BY UNITED STATES TO MAINTAIN FERRY BETWEEN GOVERNMENT FLOATS—PARAMOUNT LICENSE NOT GRANTED.—

A revocable permit given by the United States to a corporation other than the owner of such ferry franchise, to land its launches at the government floats on either side of Napa Creek at times and under circumstances which would not interfere with the government use of those floats, and which permit the United States had stated it would revoke if it should be judicially declared to be inconsistent with its contract with the owner of the ferry franchise for the operation and maintenance of the ferry, or an interference with such franchise, cannot be construed as a license from the United States to operate such launches as a ferry, paramount to the state ferry franchise.

ID.—STATE FRANCHISE RECOGNIZED BY UNITED STATES—NO IMPAIRMENT OF GOVERNMENT'S USE OF MARE ISLAND.—The recognition of such state ferry franchise, with the right therein accorded to exact tolls from the people in the employ of or having business dealings with the government authorities at Mare Island, cannot be deemed inconsistent with the exclusive jurisdiction which the government exercises over that island, or an interference with that jurisdiction which would tend to impair, if not to destroy, the effective use of that island for government purposes, because (1), it is not made to appear that the defendant in this action has been made the protector of the United States government against attacks upon its sovereignty and sovereign powers; and (2), if the recognition of this franchise be such an invasion of governmental rights, it is an invasion invited and encouraged by the government itself, which for forty-six years by contract with the plaintiff has bound the latter to do these very things.

ID.—JURISDICTION OF STATE OVER PERSON ACTING UNDER AUTHORITY OF UNITED STATES—OPERATION OF FERRY BY EMPLOYEES OF UNITED STATES.—The principle that a state cannot be permitted to assert jurisdiction over one acting under the authority of the United States for acts done by him in furtherance of the duty he owes to the federal government, cannot be extended so as to permit employees of the United States government, not acting under authority of the United States, nor under the compulsion of any duty owed to the United States, to operate an illegal ferry.

ID.—RIGHT OF INDIVIDUAL TO TRANSPORT HIMSELF AND SERVANTS IN OWN BOAT.—The common law rule, permitting a man, regardless of the existence of a ferry franchise, to transport himself, and his household, including his servants, in his own boat, should not be extended so as to justify results which would be an invasion of the franchise rights.

ID.—NATURE OF FERRY FRANCHISE—CONTINUATION OF LAND HIGHWAY.— A ferry franchise, emanating from the supreme power of the state or its authorized mandatories, is a grant to a named person em-

powering him to continue an interrupted land highway over the interrupting water. As the care and control of the highways are vested in the sovereignty, so, also, is this right to say who shall purvey for the public in the matter of the water highway. It is in no sense the grant of a monopoly, even when it is an exclusive franchise. Such grants are primarily made for the benefit of the state, only secondarily for the benefit of the grantee of the franchise.

ID.—COMBINATION OF FEDERAL EMPLOYEES TO OPERATE FERRY UNDER GUISE OF CORPORATION.—The employees of the United States government, whose employment requires them to work on Mare Island, cannot, in combination amongst themselves, and under the guise of a corporation ostensibly organized for the sham purpose of engaging in aquatic sports, maintain a ferry service, without warrant of law, for their own use between the city of Vallejo and Mare Island.

ID.—VALIDITY OF FRANCHISE—ONE TERMINUS IN FOREIGN TERRITORY.— A ferry franchise is good, regardless of whether or not it can be enforced on the further side of the watercourse. The point of departure is the basis and home of the ferry, and the fact that one terminus is in another and foreign jurisdiction does not take it out of the jurisdiction of the authority which granted it. If the outer terminal is beyond the jurisdiction of the granting power, it may affect the value of the franchise, but not its legality.

ID.—INJUNCTION RESTRAINING CONDUCT OF FERRY BY FEDERAL EMPLOYEES—PROHIBITING TERMINAL ON MARE ISLAND—INTERFERENCE WITH FEDERAL AUTHORITY.—An injunction granted the owner of such state ferry franchise, whose rights had been recognized by the United States, from which it had obtained terminal rights on Mare Island, and which had granted no franchise to any other person or corporation to operate a ferry from its shores, restraining the corporation organized by the governmental employees, to whom the government had issued such revocable permit, from conducting a ferry from points within one mile of its terminals, is not vitiated, merely because it contains a provision purporting to forbid the corporation from conducting a ferry "from any point on said Mare Island which is within one mile of plaintiff's ferry terminal on said Mare Island," thus attempting to control the conduct of the members of the corporation while upon the federal territory of Mare Island.

ID.—CONSTRUCTION OF INJUNCTION—FEDERAL GOVERNMENT ONLY CAN COMPLAIN OF INVASION OF ITS RIGHTS.—Such language in the injunction, if construed as an attempt to impose the jurisdiction of the state upon the federal territory of Mare Island, is without warrant and is in excess of law. But it is equally subject to the con-

CLXV Cal.—17

struction, that the state, operating by injunction upon the corporation of its own creation, or upon its members, its citizens, forbids an unlawful interference with the franchise which it has granted, and if it be thought that its language so doing is an invasion of a federal right, the government alone and not these wrongdoers, will be heard to complain. Furthermore, if the clause be considered wholly beyond the power of the court, it may be stricken from the judgment and the judgment be allowed to stand.

ID.—FERRY RIGHTFULLY DEPARTING FROM MARE ISLAND CANNOT ENTER JURISDICTION OF STATE.—Even if such employees were entitled to depart from Mare Island without interference of the state, they would not be entitled to go with their ferry business into the state in violation of its laws.

ID.—SCOPE OF INJUNCTION—ABSOLUTE PROHIBITION OF FERRY BETWEEN VALLEJO AND MARE ISLAND.—Where the corporation enjoined neither claims nor pretends to conduct its ferry under a state franchise beyond a mile in either direction from the plaintiff's terminals, it cannot complain of the terms of the injunction by which it is restrained from maintaining any ferry between the city of Vallejo and Mare Island.

ID.—INJUNCTIVE RELIEF NOT BARRED BY LACHES.—In view of the evidence and history of the litigation set forth in the opinion, it is held that the owner of the state ferry franchise has not slept upon its rights, but has vigorously prosecuted them, and has been guilty of no laches which would justify a court of equity in withholding the injunctive relief demanded.

APPEAL from an order of the Superior Court of Solano County granting a temporary injunction *pendente lite.* John F. Ellison, Judge presiding.

The facts are stated in the opinion of the court.

Charles S. Wheeler, John F. Bowie, and W. H. Morrissey, for Appellant.

John J. Barrett, and Lent & Humphrey, for Respondent.

HENSHAW, J.—This is an appeal from an order granting a temporary injunction *pendente lite.* Plaintiff is operating and asserting the right to operate a ferry between the city of Vallejo and territory owned by the United States government abutting upon navigable waters of Napa Creek

and known as Mare Island. The defendant is a nonprofit co-operative corporation. The complaint charges that this defendant, without franchise or other right or warrant in law, is engaged in the ferriage business between Vallejo and Mare Island, thus illegally interfering with the rights of plaintiff and injuring its business.

So much by way of outline of the nature of the litigation.

The facts deducible from the complaint and from the affidavits, which facts it must be presumed the court accepted in support of the preliminary injunction which it granted, are the following: The city of Vallejo is situated at the northerly end of San Pablo Bay and near to that bay's junction with the straits of Carquinez. Within the corporate limits of Vallejo lies Mare Island. (Stats. 1871–2, p. 566.) Mare Island was acquired by the United States, with the consent of the state of California "for the purpose of erecting and maintaining thereon such arsenals, magazines, docks, dockyards and other military and naval structures as may be required for the use of the United States government." (Stats. 1854, p. 48.) Mare Island lies westerly of the city of Vallejo proper and is separated from it by a tide water creek or estuary known as Napa Creek. This creek is navigable in law and in fact, and across it the ferry-boats of plaintiff and the launches of defendant ply. As early as 1865 and 1866 the state of California, acting in conjunction with the federal authorities at Mare Island, authorized the establishment of a steam ferry between Vallejo and Mare Island. (Stats. 1865–6, p. 147.) Ever since that time such a ferry has been maintained. Respondent holds a ferry franchise bought at public auction from the city of Vallejo in 1896, for which it paid a large sum of money. The ordinance authorizing the franchise grant imposed upon respondent a fixed schedule of tolls, a rigid standard of equipment, and detailed specifications touching the service to be rendered. The performance of these duties is secured to the city by an annual bond in the sum of twenty thousand dollars, and, further, respondent pays an annual license-tax to the city. Moreover, respondent is operating its ferry system under a contract with the United States government. This contract, first entered into with the predecessors of respondent, has been continuously renewed by the United States government and is in force at

the present time. The ferry plant of respondent, its boats, their equipment, the terminals, and the service are all maintained pursuant to rigid requirements exacted of respondent both by the municipal authorities and by its contract with the government. One of its two boats has a carrying capacity of about two thousand persons per trip and cost eighty thousand dollars. The other has a carrying capacity of about one thousand persons and cost thirty thousand dollars. It has maintained ferry slips, approaches, waiting rooms, warehouses; in short a complete equipment for the convenient transportation of passengers and freight between the designated points. Additionally, so far as the government of the United States is concerned, respondent is under bond to comply with its contract. That contract includes a schedule requiring a given number of trips to be made upon week days and upon Sundays "at such times as the commandant may designate." It is required by the government to be prepared to carry and to carry freight, teams, and passengers. Amongst other exactions by the government of this respondent are the following; that upon any and every trip there shall be carried free upon the boats of respondent all United States naval officers attached to or performing duties at the navy yards, with their families and the servants of officers; all officers attached to United States vessels temporarily or permanently established at the navy yard with their families; all enlisted men in the service of the United States on duty at the navy yard or on board any United States vessel temporarily or permanently at the navy yard; all mail carriers, messengers "and employees who may be sent on duty, such employees to be provided with proper passes," and "in case of alarm of fire at the navy yard, the yard workmen and the members of the Vallejo fire companies with their apparatus." Other provisions of the contract require the prompt, continuous, and uninterrupted performance of the service, with heavy penalties provided for neglect or failure. The ferry terminus upon the Mare Island side is assigned to respondent by the United States government.

It appears that there was upon the Mare Island side and upon the Vallejo side, quite independent of the ferry berths or slips of this respondent, a raft or float used for the convenient landing of men from the government boats and

launches. It appears further that these launches, under government control and upon government business, crossed Napa Creek, back and forth between Mare Island and Vallejo, and for a time carried free of charge such of the government clerks or draughtsmen as could or did take passage on them. This privilege in time became a burden, and the naval authorities of Mare Island, of their own initiative revoked the privilege in the month of January, 1909, and refused this right of passage to all civilian employees of the Mare Island navy yard. It was thought by some of the employees that this action upon the part of the naval authorities was instigated by respondent to force them to use its ferry service, and reprisals were commenced. One Forbes H. Brown, then chairman of the classified civil service employees of Mare Island, and president of appellant herein, filed a complaint and charges with the secretary of the navy, asserting that the respondent's franchise was invalid and had been fraudulently procured, charging the unsoundness and unseaworthiness of respondent's boats, complaining of its rates, asserting that they were exorbitant, accusing it of evasion of its taxes, and asking that the contract existing between the government and this respondent be vacated upon the charges made and for the further reason that the contract itself was unjust and extortionate. This resulted in an examination by the naval department and a refutation of the complaint and charges so made. As to the unsoundness and unseaworthiness of the boats, response was made by Bolles and Bulger, local inspectors of hulls, to the effect that "the insinuations made by the writer thereof in relation to the equipment of your boat are without any foundation of fact," and if the writer "will swear to complaint setting forth that these boats are not equipped and inspected according to the steamboat inspection laws, the matter will be properly taken up with him." Application was also made by the dissatisfied employees to the commandant of the navy yard for a vacation of his order refusing them permission longer to ride free on the government launches. This was refused.

These employees, then declining to patronize respondent's boats, gave their patronage to Lang & McPherson, who instituted a launch service between Vallejo and Mare Island. Respondent then began a suit similar to this to enjoin this

unauthorized ferry service, and the result of that litigation was an injunction against Lang & McPherson. The appeal to this court will be found reported in *Vallejo Ferry Co.* v. *Lang & McPherson,* 161 Cal. 672, [120 Pac. 421]. Lang & McPherson, notwithstanding the injunction, continued in this ferry business and were cited in contempt. They contested the contempt proceedings, which resulted in a judgment finding them guilty. Application was made to the court of appeals to prohibit the enforcement of the contempt judgment and the application was denied. (*Lang* v. *Superior Court,* 11 Cal. App. 1, [103 Pac. 908].) Thereafter on assurance from Lang & McPherson that they would discontinue their ferry operations, the proceedings were dropped. The appellant was then organized as a corporation, the nucleus and basis of its membership, if indeed not its principal membership, consisting of the dissatisfied employees of the government at Mare Island. Application was made to the attorney-general of the state, supported by argument and brief, for permission to use the state's name in an action of *quo warranto,* to have it determined that respondent's franchise is invalid and void. This was not granted. Respondent then instituted this action, with the result above indicated.

Something of the origin and history of appellant corporation has been outlined in the foregoing statement. The following remains to be added: While it is insisted that the defendant organization is one exclusively of the employees of a single employer who have combined for their own convenience and have secured for themselves their own transportation facilities, which they use in the performance of their duties in going to and from their work, this contention makes plain that the purpose for which the corporation is organized, as declared by its charter and by-laws, is a sham; that while it is organized for the avowed purpose of promoting and indulging in aquatic sports, it is in reality nothing more nor less than a ferry corporation, which is operating without a franchise and seeks to hide the true purpose of its organization. Moreover, while it is said that the membership consists exclusively of government employees, and while for the purpose of this consideration this may be conceded to be a fact, it is nevertheless true that the by-laws do not limit the membership to such persons, but expressly throw the mem-

bership open to the general public, making no other require-
ment of an applicant than "good character and industrious
habits." Furthermore, the by-laws declare that the member-
ship shall not be limited but "shall depend upon the facilities
available, the same to be increased in the discretion of the
board of directors." This, so far as concerns the ferry busi-
ness of appellant, can mean nothing more than that the cor-
poration will take into its so-called membership as many
individuals as it can transport, and will increase its member-
ship with its transportation facilities. Finally, it should be
stated that defendant is not operating under any ferry license
from the state or its mandatories, or from the United States
or any of its agencies. It runs its launches at its pleasure,
owing responsibility to no one and denying responsibility to
any one. It has a revocable permit from the commandant of
Mare Island to land its launches at the government float upon
either side of Napa Creek, under its assurance to the govern-
ment that it will not interfere with the government's own
use of these floats. The authorities of Mare Island declare
that this permit will be at once revoked if it shall be held
by the courts of the state that it operates to injure the fran-
chise of respondent. The membership of defendant has stead-
ily increased until it now numbers more than a thousand
men. These men are not of the soldiers, sailors, marines or
other enlisted men of the United States government, but are
its civil employees working at Mare Island and living in
Vallejo—men whose employment may terminate at their own
instance or at the instance of the government at any moment
—men, to take whose places, in case of vacancy, there is a
waiting list exceeding two thousand. The by-laws make men-
tion of initiation fee and monthly dues, declaring that the
amounts shall be regulated by resolution of the organization.
They provide that the board of directors "may purchase the
equity" of a retiring member, and that "the equity shall
be proportionate to the term of membership." In practice
this means nothing more than that the dues for the use of
the ferry service of defendant are $1.50 per month. If he
becomes a member not at the first of the month, but upon
some day in the month, the board of directors may reduce
this $1.50 proportionately for the fraction of the month.
Thus, where a member obtained employment and acquired

membership in the club upon December 13th, he was given a receipt for "$1.00, covering initiation Solano Aquatic Club," which receipt entitled him "to the privileges of the club for the balance of the current month." The dues are payable upon the first of the month and the "purchase of the equity" of a retiring member apparently means that the board of directors, if he shall sever his connection with the club before the end of the month for which he has paid his dues, may pay him back a proportionate share of the $1.50 which he has paid for the full month. The ferry charge for a monthly commutation ticket entitling the holder to practically unlimited use of respondent's ferry is $2.00. The serious interference by appellant with the ferry business of respondent is not only evident, but it is declared that respondent cannot live up to its contracts, and that no ferry or ferry service can be maintained between Vallejo proper and Mare Island unless it be freed from such interference and injury and be recognized as exclusive.

Appellant's attacks upon this appeal may be grouped for convenience under certain heads.

1. An attack upon the validity and upon the scope of respondent's franchise.

2. The assertion of the right in appellant to do precisely what it is doing, regardless of the validity of respondent's franchise.

3. An attack upon the terms of the restraining order as exceeding all warrant in law.

4. The asserted laches of respondent which forbids the granting of the temporary injunction, even if under every other consideration it were permissible to grant it.

1. Many of the grounds of attack upon the validity of respondent's franchise were urged upon the attention of th· : court in the case of *Vallejo Ferry Co.* v. *Lang & McPherson,* 161 Cal. 672, [120 Pac. 421]. No occasion arises for repeating the reasons there given and the holding there made to the effect that the city of Vallejo did have the power to grant the franchise in question, and that the Vallejo Ferry Company was operating under authority of law by virtue of that franchise. The limitation upon the power of the city of Vallejo to grant ferry franchises, whose termini shall be within the limits of the city, is not abused nor violated by

reason of the fact that the Mare Island terminus is upon land over which the United States admittedly exercises exclusive jurisdiction. (Const., United States, art. I, sec. 8.) Mare Island is still within the corporate geographical and territorial limits of the city of Vallejo, just as completely and in the same sense as the United States military reservation, the Presidio, is within the corporate limits of the city and county of San Francisco. (*Crook et al.* v. *Old Point Comfort Hotel Co.*, 54 Fed. 604.) Still more, the franchise enjoyed by respondent is an exclusive franchise within the meaning of the law, and especially within the limitation of the Political Code, section 2853, which forbids the erection and operation of a second toll-bridge or ferry within one mile above or below a regularly established toll-bridge or ferry, unless public convenience renders necessary the franchise for a second bridge or ferry. There is in this no invasion of private rights, no bestowal of monopolistic special privileges, no interference with the free right of navigation. Ferries are established primarily for the convenience of the people. It is the duty of the government, which has thus invited private capital to aid in the comforts and conveniences of its citizens, to safeguard the rights which it had bestowed, and to see that the enjoyment of those rights is coextensive with the grant of them. (*Norris* v. *Farmers' & Teamsters' Co.*, 6 Cal. 590, [65 Am. Dec. 535] ; *Fortain* v. *Smith*, 114 Cal. 494, [46 Pac. 381] ; *Patterson* v. *Wollmann*, 5 N. D. 608, [33 L. R. A. 536, 67 N. W. 1040].) Nor does the fact that the Mare Island terminus of this ferry is upon territory owned by and subject to the jurisdiction of the United States in the least militate against the validity or legality of the franchise itself, whatever effect it may have upon the value of the franchise. It may be conceded or declared that the United States government would have power to forbid the ferry boats of respondent from landing upon the island, but this would in no wise affect the legality of the franchise. In the parallel case of *People* v. *Babcock*, 11 Wend. (N. Y.) 590, Babcock was brought before a justice of the peace, charged with having violated the statutes of New York regulating ferries, by transporting to Canada across the navigable waters of the Niagara River persons and goods for profit and hire, without having obtained a license. Says the court: "So far as jurisdiction

is concerned, it is as complete over this river to the center thereof, as over any other stream within the county. The privilege of the license may not be as valuable to the grantee by not extending across the river; but as far as it does extend, he is entitled to all the provisions of the law, the object of which is to secure the exclusive privilege of maintaining a ferry at a designated place.'' Such is the great current of authority. (See *Conway* v. *Taylor's Exr.*, 1 Black, (U. S.) 603, [17 L. Ed. 191]; *Haeussler et al.* v. *City of St. Louis,* 205 Mo. 656, [103 S. W. 1034]; *New York Central* v. *Board of Chosen Freeholders,* 76 N. J. L. 664, [16 Ann. Cas. 858, 74 Atl. 954]; *Wiggins Ferry Co.* v. *City of East St. Louis,* 107 U. S. 365, [27 L. Ed. 419, 2 Sup. Ct. Rep. 257]; *Cauble* v. *Craig,* 94 Mo. App. 675, [69 S. W. 49]; *Nixon* v. *Reid,* 8 S. D. 507, [32 L. R. A. 315, 67 N. W. 57]; *Helm* v. *City of Grayville,* 224 Ill. 274, [79 N. E. 689]; *State* v. *Faudre,* 54 W. Va. 122, [102 Am. St. Rep. 927, 1 Ann. Cas. 104, 63 L. R. A. 877, 46 S. E. 269]; *Columbia Delaware Bridge* v. *Geisse,* 38 N. J. L. 39; 12 Am. & Eng. Ency. of Law, 2d ed., 1901.) If it be conceived—though to this we do not agree—that the language of the supreme court of Oregon in *Hackett* v. *Wilson,* 12 Or. 25, [6 Pac. 652], is in opposition to this otherwise uniform current of authority, it must suffice to say that the Oregon decision does not commend itself to our judgment. No weight attaches to the final argument of appellant under this proposition to the effect that ''if ferries are to be operated at all to and from islands used as forts or navy yards, they can be operated by authority of the federal government, and the federal government is the exclusive judge of the necessity to grant the privilege. It has absolute control over the landing of persons and property on its territory, and over all departures therefrom. *It has licensed appellant, and that license is paramount to any franchise which the state could grant.''* No question here arises, or we think could ever arise, over the right and power of the federal government to move its own troops, employees, material, and munitions when and howsoever it may please, and no question can arise over the power of the United States government to control, restrict, or even prohibit landings upon its territory segregated and set aside for purposes of war or defense. But all this is beside the

proposition for which appellant contends. And, as to this, it is to be remembered, that the government of the United States does not even assert the power to grant ferry franchises. Its highest court has said (*Conway* v. *Taylor's Exr.*, 1 Black, (U. S.) 603, [17 L. Ed. 191].) "There has been now nearly three-fourths of a century of practical interpretation of the constitution. During all that time, as before the constitution had its birth, the states have exercised the power to establish and regulate ferries; Congress, never. We have sought in vain for any act of Congress which involves the exercise of this power. That the authority lies within the scope of 'that immense mass' of undelegated powers which 'are reserved to the states respectively' we think too clear to admit of doubt." So much for the asserted right of the federal government to issue a ferry franchise. As to the privilege "of operating a ferry having one of its termini upon the government reservation at Mare Island," it has heretofore been said and shown that not only has the privilege been extended to this respondent, but the government itself has entered into a solemn contract with respondent, binding both to the performance of designated duties, and that this contract has been in force for over forty years. And as to the final declaration that the United States government "has licensed appellant and that this license is paramount to any franchise which the state could grant," the facts as above set forth are that the United States has given a revocable permit to appellant to land its launches at the government floats at times and under circumstances which will not interfere with the government's use of those floats, and has stated that it will revoke this if it be declared to be inconsistent with its contract with the respondent and an interference with respondent's ferry franchise. It seems scarcely logical to evolve a paramount license out of such a revocable permit.

Nor is it perceived that there is any better foundation for appellant's next argument, to the effect that to recognize the franchises of respondent, with the right therein accorded to exact tolls from the people in the employ of or having business dealings with the government authorities at Mare Island, is inconsistent with the exclusive jurisdiction which the government exercises over Mare Island, and would be to

countenance an interference with that jurisdiction which would tend to impair, if not to destroy, the effective use of Mare Island for governmental purposes; and that the dictates of high public policy forbid such a pronouncement of the law, which is wholly inconsistent with the free and effective use of this naval and military reservation. For the obvious answer to this is twofold. First, it is not made to appear that the appellant has been made the protector of the United States government against attacks upon its sovereignty and sovereign powers; and, second, if the recognition of this franchise be such an invasion of governmental rights, it is an invasion invited and encouraged by the government itself, which for forty-six years by contract with respondent has bound the latter to do these very things. Indeed, it may be added that the dictates of public policy urge most strongly in the opposite direction. The convenience of the public, which is the fundamental ground and reason for granting a ferry franchise, the control of the granting power over the exercise of the franchise, the convenience and safety of the public which result, are all present in this case, as in every case of a ferry operating under sanction of law. This particular ferry is not alone a convenience to the general public, but a convenience to the United States government, and it is so recognized. Consider for a moment the effect upon the public welfare, both of the state of California and of the United States, if respondent should be forced to go out of business because of a holding that any person may engage in ferriage between Vallejo and Mare Island. Is it to be thought that such a ruling would be to the interest of the state, of the nation, and of their citizens? Is it not manifest that it is even of greater consequence to the national government than to the state that an orderly ferry service should be maintained? Indeed, as is well said in *Patterson* v. *Wollmann*, 5 N. D. 608, [33 L. R. A. 536, 67 N. W. 1040] : "There is nothing in the history of the English nation or of the American people which warrants the conclusion that this practice of granting exclusive ferry franchises has resulted in imposing intolerable burdens upon the public, or has led to other than beneficial results." To the final proposition advanced by appellant under this head, to the effect that even if the franchise be held to be valid

in its scope, it must be limited so as to exclude from its operation those persons who are "agents or employees of the federal government if such a franchise would tend in the slightest way to impede the work of the government," are cited such cases as *In re Thomas,* 87 Fed. 453, [31 C. C. A. 80], where a state oleomargarine law was construed to have no application to a soldiers' home; *Pundt* v. *Pendleton,* 167 Fed. 997, where it was held that general road laws warranting arrest and imprisonment for failure to do road work had no application to a teamster employed on a military reservation; and *In re Waite,* 81 Fed. 359, where petitioner sued out a writ of *habeas corpus* seeking his discharge from a criminal conviction by a state court for violation of a state statute, the crime arising out of his execution of his duties as an officer of the United States. These cases were all decided upon the familiar and unimpeachable principle that a state cannot be permitted to assert jurisdiction over one acting under the authority of the United States for acts by him done in furtherance of the duty he owes to the federal government. But it is a far cry to seek to extend and apply this principle so as to permit employees of the United States government, not acting under authority of the United States, nor under the compulsion of any duty owed to the United States, to operate an illegal ferry. The protection which the United States government accords to its officers and agents in the performance of the duties, exacted by the government of them, making them amenable in the performance of those duties, to the federal law alone, would not, we think, be held to stay the hand of the state if a letter carrier, returning to his home, should slay his wife, notwithstanding the fact that, by the action of the state authorities, the operations of the federal government might to a certain measure be obstructed.

2. Support for appellant's asserted right to do what it is doing, regardless of the validity of respondent's franchise, is sought to be found in the principle that, notwithstanding the existence of a bridge or ferry franchise, (1) a man may, in his own boat, transport his family, his goods, and his servants; (2) that the members of the corporation are all employees of one employer—the United States government; that the United States government has the right to transport

its officers, soldiers, agents, and employees in such manner as it sees fit, and that this same right rests with these employees. As to the first of the propositions the courts have with promptness and severity frowned down upon any extension of the common-law rule permitting a man, regardless of the existence of a ferry franchise to transport himself, and his household, including his servants. The courts have held that the ancient rule was and is based upon the fact that such transportation by the owner of a boat would constitute such slight interference with the franchise rights as to amount to *damnum absque injuria* (*Hunter* v. *Moore,* 44 Ark. 184, [51 Am. Rep. 589]), but that an extension of the rule manifestly would lead to unwarranted injurious results. No concert of action nor community of interest has been held sufficient to warrant such an invasion of franchise rights. This was early held in this state in the leading case of *Norris* v. *Farmers' & Teamsters' Co.,* 6 Cal. 590, [65 Am. Dec. 535], and even earlier, in the case of *Hanson* v. *Webb,* 3 Cal. 236. *Norris* v. *Farmers' & Teamsters' Co.,* saving for the circumstance that the operators of the unlicensed ferry were not employees of a single employer, is very similar in its facts to the case at bar. The Farmers' & Teamsters' Company declared itself to be a joint stock company, of which only the members had the privilege of using the ferry. They never used their ferry to carry over any person for pay or toll, nor allowed the ferry to be used as a free ferry. Its use was limited to the members of the company, who, by subscribing a dollar became entitled to the use of the ferry for one month, and their membership and membership rights had to be continued by a like payment month by month. By virtue of this payment the member became a stockholder and the owner of an undivided interest in the ferry property. The trial court granted an injunction and its judgment was sustained by this court in an opinion which discusses with elaboration, care and thoroughness the principles of law involved, with an exposure of the sham of appellant's pretensions. To like effect is *Warren* v. *Tanner,* (Ky.) 56 S. W. 167, [49 L. R. A. 248], where sixty odd persons combined and established for the "private use" of themselves and their families a ferry, the operation of which was enjoined. To the same effect are *Hatten* v. *Turman,* 123 Ky. 844, [97 S.

W. 770] ; *Chiapella* v. *Brown*, 14 La. Ann. 189 ; *Blanchard* v. *Abraham*, 115 La. 989, [40 South. 379] ; *Shemwell* v. *Finley*, 88 Ark. 330, [114 S. W. 705] ; *Weld* v. *Chapman*, 2 Iowa, 524; *Dinner* v. *Humbserstone*, 26 Can. Sup. Ct. Rep. 252.   In all of these cases will be found the same effort to extend the rule under various forms of subterfuge and evasion.

The second proposition advanced under this head is twofold in its argument, the one being that because the United States government as an employer would have the right to transport its employees, the employees have the same right to provide for their own transportation.   The other is that the right of each employee to row himself in his own boat is unquestioned, and that what one man may do the many may do in combination.   In discussing this second proposition it is, perhaps, well to recall precisely what a ferry franchise is and what are its effects upon the general public.   A ferry franchise emanating from the supreme power of the state or its authorized mandatories, is a grant to a named person empowering him to continue an interrupted land highway over the interrupting waters.   As the care and control of the highways are vested in the sovereignty, so also is this right to say who shall purvey for the public in the matter of the water highway.   It is in no sense the grant of a monopoly, even when it is an exclusive franchise, as is clearly set forth by Mr. Justice Story in the case of *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge,* 36 U. S. 420, [9 L. Ed. 773].   Says that eminent justice: "No sound lawyer will, I presume, assert that the grant of a right to erect a bridge over a navigable stream is a grant of a common right. Before such grant, had all the citizens of the state a right to erect bridges over navigable streams?   Certainly they had not, and therefore the grant was no restriction of any common right.   It was neither a monopoly, nor, in a legal sense, had it any tendency to a monopoly.   It took from no citizen what he possessed before, and had no tendency to take it from him.   It took, indeed, from the legislature the power of granting the same identical privilege or franchise to any other persons.   But this made it no more a monopoly than the grant of the public stock or funds of the state for a valuable consideration."   These grants are primarily made for the benefit of the state, only secondarily for the benefit of the

grantee of the franchise. They are accompanied by exactions as to the service to be performed, the times thereof, the conveniences attending them, and they are further accompanied by regulatory measures affecting charges and tolls. In return for this, and to the end that this public service may be maintained according to the exacted standard, it becomes the manifest duty of the state to see that the rights of the owner of the franchise are not interfered with. It puts upon the public no compulsion to use the ferry, but it forbids to the public or to any considerable part of it, the right which before the existence of the ferry franchise they were entitled to enjoy,—namely, the right by combination, co-operation and association to conduct their own ferriage. Thus, it would not be regarded as an unwarranted infringement of a ferry franchise for a man to transport across the stream, within the territorial limits of the franchise right, himself, his family, his goods, and his servants. It is this last mentioned doctrine whose application is sought to be extended to the extreme length of justifying appellant's conduct. The doctrine itself is an ancient one. It has arisen and has been applied in many cases and the foundation of it has been said to rest in the ancient right of a man so to use his own boat. But it has always been the owner's right, the master's right in pursuit of his own private business or pleasure, to which the doctrine has been applied. Thus in *Ives* v. *Calvin,* 3 Upper Canada Queen's Bench Reports, 464, the action was against Calvin for the violation of a ferry franchise, and it was held that by virtue of the common law and by virtue of a provincial statute, a person was at liberty to use his boat for carrying backward and forward his own household and servants, or the laborers in his employment. It there appeared that a ferry franchise had been granted between Kingston and Garden Island; that defendant lived upon Garden Island, where he carried on a large business in loading and unloading vessels and in building and repairing; that he employed a great number of men and used his own boats to carry his own material and his own men back and forth. It is there declared with reference to the defendant's rights that "if defendant were precluded from using his own boats and were compelled to avail himself of the plaintiff's ferry on all occasions, he would be exposed to an unreason-

able, if not intolerable, burden.'' This case, relied upon by appellant, would be pertinent to the consideration if by this action it were sought to restrain the United States government from moving at will its own men and munitions. In *Dinner* v. *Humberstone*, 26 Can. Sup. Ct. Rep. 252, however, the supreme court of Canada rigidly suppressed an effort such as was here made whereby an association sought to operate a ferry upon the familiar plea that it was but a private association not open to the public, not dealing with the public, and therefore not creating any legal interference with plaintiff's franchise.

Appellant's assertion that because an employer may so transport his employees, the employees may make provision for their own transportation, is without foundation in any adjudicated case and is entirely beyond the reason of the rule which upholds the conduct of the employer. It is because he *is* the employer that he may move, for purposes of his own convenience, or even profit, his own people in his own boats. Of course in the case of the United States government, itself a sovereign power, the right does not rest alone upon so narrow a ground. It would be one of its inherent powers of sovereignty, beyond question. But certainly it would not be contended that the inherent powers of sovereignty could be exercised by any one or any number of the employees of the government, and therefore the whole proposition, so far as this appellant is concerned, must rest upon the employees' right to do what the employer may do. The unwarranted assertion is made by appellant that to deny this right to the employees is to favor the rich against the poor, the employer against the employees. In truth, in logic and in law every right that is open to the employer is possessed by the employee. The employee may, as may the employer, in his own boat and for his own purpose of pleasure or convenience, move himself, his family, his household goods, and his servants. This is as much his right as it is the employer's, and the employer's right is no whit greater. To assert, as is here done, that the employees may *in combination to any number and to any extent* procure boats, run a regular service, and thus, without warrant of law, operate a ferry, is to say that the employees possess greater rights than does the employer, rights which would ever be denied the em-

ployer. The employees do not seek to exercise the same right. They seek to combine. Would a combination of the employers of Vallejo to move their goods and people by ferriage in the boats owned by the combination be countenanced? The attempt has been made in many diverse forms and has never been allowed. Yet, if the argument of appellant upon this proposition is sound, it should have been allowed, and there could then be no logical reason for denying the same right, both to all or any number of employers, and to all or any number of employees under different employers. In fact, if community of interest be thus made the sole basis for the act proposed to be done, the same reasoning would authorize the inhabitants of a city, or any considerable number of them, to do the same thing.

As little warrant is there for the application of the second proposition,—namely, that because each employee has the right to row himself in his own boat for pleasure, convenience or economy, the employees may associate for that purpose, since what one man may do, many may do in combination. The maxim is one of frequent application and, when properly understood, is unimpeachable. But, like many another of such convenient phrases of the law, it has its well defined limits. It is not always nor universally true that what one man may do, many may do in combination. It is only those acts which work no invasion of rights when done in combination that may be so done. One man may go to the theater, or a party of twenty may go, and necessarily no harm to one's rights or privileges is here involved. But, upon the other hand, one man may set the price of his goods at a given figure and be quite within his rights, whereas if the merchants of the town agree by combination to set this same figure, not only is the wrong apparent, but it is one forbidden by law. So here, the one man rowing his boat within the limits of the ferry franchise exercises a personal right and his act as to the ferry company is *damnum absque injuria.* Let a thousand or two thousand men in combination propose to buy boats and operate them for their common use and convenience, then the right of one man, which he may unquestionably exercise alone, has by combination been converted into an unwarranted ferry system for the many.

3. Under this head it is pointed out that the injunction forbids the appellant from conducting a ferry "from any point on said Mare Island which is within one mile of plaintiff's ferry terminal on said Mare Island, to any point within the said city of Vallejo which is within one mile of plaintiff's ferry terminal in the said city of Vallejo." And still further the judgment enjoins the appellant "from maintaining or operating under the guise of the Solano Aquatic Club or otherwise, a ferry between said city of Vallejo and said Mare Island." As to the first of these quotations, it is said it is wholly beyond the power of the state court to control the conduct of appellant's members while upon the federal territory of Mare Island, and it is argued from this not only that the judgment must be reversed, but that appellants have the unquestioned right, without interference from state authority, to embark in any manner they see fit under the license of the federal government from the Mare Island side, and, having this right, which goes with them at least upon the navigable waters, they must have an equal right to land upon the government float on the Vallejo side, which government float, in argument, is treated as having all the dignity and exclusiveness of a government battleship. It has heretofore been pointed out that a ferry franchise is good, regardless of whether or not it can be enforced on the further side of the watercourse (*Sisterville Ferry Co.* v. *Russell,* 52 W. Va. 356 [59 L. R. A. 513, 43 S. E. 107]), and that the point of departure is the basis and home of the ferry (*State* v. *Faudre,* 54 W. Va. 122, [102 Am. St. Rep. 927, 1 Ann. Cas. 104, 63 L. R. A. 877, 46 S. E. 269]), and the fact that one terminus is in another and foreign jurisdiction does not take it out of the jurisdiction of the authority which granted it. (*Nixon et al.* v. *Reid,* 8 S. D. 507, [32 L. R. A. 315, 67 N. W. 57]; *New York Central* v. *Board of Chosen Freeholders,* 76 N. J. L. 664, [16 Ann. Cas. 858, 74 Atl. 954].) If the outer terminal is beyond the jurisdiction of the granting power, it may affect the value of the franchise, but not its legality. (*Conway et al.* v. *Taylor's Exrs.,* 1 Black, (U. S.) 603, [17 L. Ed. 171]; *Columbia-Delaware Bridge Co.* v. *Geisse,* 38 N. J. L. 39.) Under these principles, the right of the state to control appellant for the violation of a franchise granted by it can be legally met only by a showing that the appellant is himself

operating by authority of an equal or paramount power; as in a case where navigable waters divide two states, each state has the unquestioned authority to grant a ferry franchise, and each state has the right to restrain an unwarranted invasion of the franchise rights so granted.  The value of the franchise will depend upon the ability to secure recognition and a terminus in the foreign territory.  Respondent is operating by virtue of such a franchise, has obtained full recognition and terminal rights from the foreign authority.  The foreign authority has granted no franchise to any other person or corporation to operate a ferry from its shores.  It has, we repeat, but given a revocable permit to certain of its employees to use one of its floats.  The language in the injunction objected to, construed as an attempt to impose the jurisdiction of the state upon the federal territory of Mare Island, is, of course, without warrant and in excess of the law.  But it is equally subject to another construction, and that is that the state operating by injunction upon its own creation, the Solano Aquatic Club, or upon its members, its citizens, forbids an unlawful interference with the franchise which it has granted, and if it be thought that its language so doing is an invasion of a federal right, the government alone and not these wrongdoers will be heard to complain. And, finally, it may be said that the clause, if considered wholly beyond the power of the court, may be stricken from the judgment and the judgment be allowed to stand.  We perceive no force in the contention that even if the employees be allowed to depart from Mare Island without interference of the state, they may go with their ferry business into the state in violation of its laws.  This certainly they cannot do. The second quotation might be an interference with its rights of which appellant could justly complain, if appellant were maintaining under franchise a ferry beyond a mile in either direction from respondent's ferry slip.  But it does not claim nor pretend that it is so doing.  Finally, in view of our uniform decisions, from *Norris* v. *Farmers' & Teamsters' Co.,* 6 Cal. 590, [65 Am. Dec. 535], to *Vallejo Ferry Co.* v. *Lang & McPherson,* 161 Cal. 672, [120 Pac. 421], where an injunction was granted to protect the identical franchise which the same plaintiff is here exercising, it seems unnecessary to enter into any detailed discussion to show that injunction is

the appropriate remedy, and that it is not the less appropriate because one of the terminals of the ferry is without the jurisdiction of the authority granting the franchise. (*Cauble et al.* v. *Craig,* 94 Mo. App. 675, [69 S. W. 49].)

4. By the statement of facts and the history of the litigation heretofore given it is, we think, made sufficiently plain that this respondent has not slept upon its rights, but has vigorously prosecuted them, and has been guilty of no laches so far as this appellant is concerned which would justify a court in equity in withholding the relief demanded.   There is much to support respondent's argument in this regard that the case of *Vallejo Ferry Co.* v. *Lang & McPherson* was treated by all the parties as being a test case to decide the right of the employees to conduct their ferry.   It will be remembered that Lang & McPherson were actually engaged in the ferriage of these members of the Solano Aquatic Club, and when, under injunction, Lang & McPherson gave up their business, these employees first hired boats and boatmen, and subsequently organized this corporation to continue the same ferriage business.   Moreover, it appears from the record that in the petition for rehearing before this court in the Lang & McPherson case it is explicitly declared that these employees, the members of appellant corporation, were virtually the parties in interest in the Lang & McPherson case and vitally concerned with the outcome of the litigation.   It is not possible to perceive, therefore, how it can be successfully charged against respondent that it in any way lulled this appellant or its members into a false and fatal security.

For these reasons and under the construction of the injunction *pendente lite* which has been herein given, the order appealed from is affirmed.

Shaw, J., Lorigan, J., Melvin, J., Sloss, J., and Angellotti, J., concurred.

Rehearing denied.