## HUDSPETH v. HALL et al.

1. The right to establish and maintain a public ferry is a franchise, which, in this State, can only be granted by the proper county authorities. Such a grant carries with it no exclusive privileges, but such authorities may, under the laws of this State, grant the right to establish over the same stream such additional public ferries as the public convenience demands; and if the first grantee is injured by the establishment and maintenance of another public ferry, he has no right of action to recover damages therefor; it is damnum absque injuria.

2. To lawfully establish and maintain a private ferry, no franchise is required. Such a right is incident to the ownership of land on both sides of a stream of water, to enable the owner to better use and enjoy his land. While the owner of a private ferry may lawfully charge and collect toll from persons incidentally crossing thereat, he can not maintain the ferry for use by the public at large. If he does this, or if he seeks public patronage, or pursues the business of keeping up the ferry for the public, it loses its character as a private ferry.

3. The injunction in this case was not sufficiently comprehensive to protect the rights of the plaintiff. The defendant should have been enjoined from establishing a ferry designed to accommodate the public or any part thereof.

Argued March 20, — Decided July 13, 1900.

Petition for injunction. Before Judge Hansell. Baker superior court. December 12, 1899.

*B. B. Bower* and *A. L. Hawes*, for plaintiff.
*D. H. Pope & Son*, for defendants.

LITTLE, J. Mrs. Hudspeth exhibited a petition against Baker County and the Board of Commissioners of Roads and Revenues of Baker County, joining with them certain private individuals, and alleged that she was the owner of a public ferry

across the Flint river at the town of Newton; that she and those under whom she claims have controlled and continuously operated said ferry, without interruption, for more than seventy years, and that recently, on the petition of some of the defendants, the county commissioners of Baker County granted an order establishing a free ferry across Flint river within two hundred yards of her ferry. She prayed for an injunction restraining the defendants from establishing or operating the ferry so authorized, or one at any other place on said river within three miles of the location of her ferry. On presentation of this petition, a restraining order was issued; and, pending a hearing for injunction, the plaintiff amended her petition, and by way of amendment alleged that R. L. Hall, not a party to the petition, since the filing of the same, had begun and was operating in his own name a ferry, by means of a bateau, across said river, at the place where the county commissioners had authorized the establishment of the ferry which she sought to enjoin. She prayed that Hall be made a party defendant to her petition as amended, and that he be enjoined and restrained in the same manner as the original defendants to the petition had been restrained, and that he be permanently enjoined from establishing and operating said ferry. At the hearing had on this amended petition it was ordered that Hall be made a party defendant, and that he be restrained in the same manner and to the same extent as the original defendants had been restrained. By a subsequent amendment the plaintiff alleged that Hall did not intend to establish a private ferry, but that he was a merchant in the town of Newton, and, in collusion with other merchants of the same place, was seeking and intending to establish a public free ferry over the Flint river, near her own; although it was to be run ostensibly as a private ferry; by which, if he did so, plaintiff's franchise rights would be violated. She further alleged that Hall did not own the land on the east side of said river where he proposed to put his ferry, and he therefore could not operate a private ferry under the law, but that she owned the land on the Mitchell county side where Hall intended to establish his ferry. She also alleged that, even if Hall owned the land on both sides of the river, he had no legal right to establish a ferry within any distance of that of the plain-

tiff where it would hurt or injure her business in any way, because when she purchased the land she also purchased the exclusive ferry rights, franchises, and privileges, of which Hall had notice when he purchased. The defendants, the Board of County Commissioners of Baker County, answered the petition, and averred that, after having the legality of the contract they made passed on by counsel, they were advised that the same was not legal; that they accepted said advice, and on the 6th, day of June, 1899, after the filing of the petition, rescinded their order previously granted to establish the ferry of which complaint is made. The other defendants, except R. L. Hall, in answering the petition, admitted having joined in the petition for the establishment of a ferry by the County of Baker for the use of the public, but denied that they entered into any scheme to defraud the plaintiff of her ferry franchise, and they believed that the county authorities had a perfect right to establish such a ferry. They say that they have done no act towards the establishment or operation of a ferry at Newton, other than this, and that the county authorities have revoked the order establishing the ferry for which they petitioned.

R. L. Hall answered, that he had no connection with any of the schemes charged in the original petition. He denied that he had sought to deprive petitioner of the profits of her ferry, but said that he owned the land on both sides of the stream at the point named in the petition, and, being a merchant in the town of Newton, he did, before the original petition was filed, own and operate a boat, designated as a bateau, across said stream for the benefit of his trade, and for the benefit and convenience of his customers, to whom he charged no toll, and that he had the legal right to operate said boat, and, being the owner of the land, he has the right to open and operate a free ferry across Flint river, under the laws of Georgia, and to charge toll for the same, and that the plaintiff has no exclusive right to operate a ferry; and he asked that the restraining order be dissolved, so that he could open and operate a free ferry, or toll ferry, across said river on his own land, just as he might desire, and as under the law he had a right to do. Further answering he said that he was seeking bona fide and honestly to establish and operate a ferry at the place mentioned in the peti-

tion, for the accommodation of Mitchell county customers who come to the town of Newton to trade, and, if he was mistaken as to his ownership of the land on both sides of the stream, he would move down on his own land and establish a ferry, as it was not his intention to appropriate any of the land of the plaintiff for his purposes. He denied that the plaintiff purchased the exclusive ferry rights. On the hearing, the judge denied the injunction as prayed, because, while the plaintiff had shown that she was the owner of an ancient ferry by prescription, that title by prescription did not carry with it any exclusive privileges; but inasmuch as it appeared that the plaintiff was the owner of four acres of land on which the approaches to the ferry were located, on each side of Flint river, he enjoined the defendant from entering on that land for ferriage purposes either public or private, by bateaux or other boats. The plaintiff excepted to the refusal of the judge to sustain and recognize the plaintiff's exclusive ferry franchise, and to the refusal to grant an injunction prohibiting the defendant from establishing and erecting a private and free ferry at any point within three miles of the location of the ferry belonging to plaintiff, or within such close proximity thereto as to seriously and substantially interfere with the profits, value, and franchises of the same. By all of the answers to the original and amended petition, all legal questions as to the right of the original defendants to establish a ferry are eliminated, and only the issues raised by the answer of the defendant R. L. Hall to the allegations of the original and amended petition are to be considered. Much evidence was introduced by both the plaintiff and the defendant. As, however, there seems to be no serious conflict between the parties, except as to the ownership of the land on both sides of the stream at the particular point where it was proposed to establish a ferry by the defendant, no reference is necessary to the evidence adduced, because, in our opinion, the application of certain legal propositions to the admitted facts will determine the rights of the respective parties to this controversy.

1. The claim of the plaintiff, that she has an exclusive right to maintain her ferry at Newton, and that no ferry can be established within three miles up and down the stream from the location of her ferry, can not be maintained. The right of a

ferry is a franchise, and originally the power to grant it was in the legislature. The constitution of 1877 (art. 6, sec. 6, par. 2) declares that the courts of ordinary shall have such powers in relation to ferries as may be conferred on them by law, and by the Civil Code, § 4238, par. 3, the ordinary has been invested with original and exclusive jurisdiction in establishing, altering, or abolishing ferries, in conformity to law. It must be understood that reference is had alone to public ferries; a consideration of the right to establish and maintain a private ferry will hereafter be had. It is not pretended that the plaintiff in error had a grant from the legislature or the county authorities to establish the public ferry which she maintained and operated at the town of Newton. It was very clearly shown, however, that she and those under whom she claims had maintained and operated a public ferry at the same place across Flint river for a period of time approximating seventy years, continuously and without interruption. In the case of *Williams* v. *Turner*, 7 *Ga.* 348, it was ruled that from seven years exclusive and continued possession and enjoyment of a ferry right in this State a grant will be presumed. So that, notwithstanding Mrs. Hudspeth had no direct grant of a franchise to operate a public ferry, a grant will be presumed because of her exclusive and continued possession and enjoyment of this ferry right, and to all intents and purposes her rights are to be fixed and determined under the same rules as if she had actually received a grant of such right; but a grant to establish and operate a public ferry does not carry with it any exclusive right. In the case of *Shorter* v. *Smith*, 9 *Ga.* 517, it was declared that the ancient doctrine of the common law, that the franchise of ferry, although not declared to be exclusive, is necessarily implied in the grant, is inapplicable to both the local situation and political institutions of this country. Judge Lumpkin, in delivering the opinion of the court in that case, said, in relation to ferry rights, after referring to a declaration made by Chief Justice Taney that a State ought never to be presumed to surrender its power, because the whole community have an interest in preserving it undiminished: "I may be allowed to add that the proposition which it establishes commands my entire assent and approbation, namely: that the grant of a

public road, bridge, or ferry confers the right to 'construct the improvements only, and to receive certain rates of toll, but does not carry with it exclusive privileges, where none such are expressly given; and that, by grants of this description, the legislature, or the inferior court acting by their authority, are not deprived of the power of making of other grants side by side with the former, and in the same line of travel, provided there be no express violation in the first grant." In the case of *Williams* v. *Turner*, supra, it is the conclusion of Judge Nisbet, who delivered the opinion, that "The legislature may grant as many ferry rights as it pleases. One grant to A. does not preclude another to B.; and if A., being the first grantee, is injured by B.'s ferry, he has no right of action; for it is *damnum absque injuria*." As before observed, these principles of law apply alone to the establishment of public ferries. In the case last cited it was declared that if A. has a grant, and is injured by B.'s ferry erected on his own land without a grant, he is entitled to recover damages to the extent of his injury. We apprehend that the case of *Dougherty County* v. *Tift*, 75 *Ga.* 815, with the reasoning of which we do not entirely agree, was, in some measure at least, sought to be based on this latter proposition. But it is sufficient on this point to adopt the express adjudication of this court, that the grant to establish a public ferry does not carry with it, under the law of this State, an exclusive right to a ferry franchise, and that, a ferry having been established for public convenience, it is entirely within the power, originally of the legislature, now of the county authorities, to authorize the establishment and maintenance of such other and additional public ferries on the same stream as may be considered necessary to subserve the public interests. In this connection see also *Wright* v. *Nagle*, 48 *Ga.* 367.

It is contended, however, that the provision of the Political Code, § 613, that no private ferry charging toll shall be established on any watercourse within three miles of where public bridges are previously erected and kept up, applies in this case, and that under its terms no ferry can be established and maintained on the Flint river within three miles of the location of the ferry owned and operated by the plaintiff. This position is not tenable. This court, in the case of *Greer* v. *Haugabook*,

47 *Ga.* 285, in construing the act from which this section was codified, declared that it would be making, rather than expounding law, to say that this provision of law referred to a public ferry; and that if the legislature intended to include ferries in its provisions, it is only a fair presumption to suppose that they would have said so. So that this contention of the plaintiff must fail, and, as a matter of law, the plaintiff, by the grant (presumed) authorizing her to establish and maintain the public ferry, obtained no exclusive rights thereby; and it is perfectly competent for the county authorities to establish additional public ferries, as the convenience of the public may demand.

2. Prior to the act of 1850 (Cobb's Dig. 958) the right to establish a private ferry was incident to the ownership of the land on both sides of the water desired to be crossed; but the owner of such private ferry was not entitled to charge and collect toll for crossing. By the act above referred to, which partly appears in the Political Code, § 616, any person who is the owner of land through which a stream passes may establish a ferry at his expense, and charge lawful toll for crossing. It will be observed that this act does not contemplate the establishment of a public ferry, but enlarges the right of a landowner to establish a private ferry, by authorizing him to collect toll from persons crossing at his ferry. A difficulty arose in construing this act, when considered with reference to other provisions of law which were not repealed by its passage. On the one hand, the rights of the person having the franchise to operate a public ferry were to be protected; on the other, the convenience of individuals desiring to cross a stream in the immediate vicinity of the private ferry was to be considered; and this court, in the case of *Greer* v. *Haugabook*, supra, gave a meaning to the provisions found in this section, which satisfactorily harmonizes the various provisions of law applicable to the subject. In the opinion Judge McCay says that it was the duty of the court to reconcile the provision which declares that a public ferry is a franchise and that the owner of the land does not have the right to establish a public ferry, and that which allows a landowner to establish and use a ferry and charge toll for crossing thereat. He says: "The solution which

occurs to us is the distinction between a private and a public ferry. A man may have a flat on a stream, and may use it to carry over his own people, wagons, etc., and he may occasionally take over a neighbor and take pay for it; yet it is not necessarily a public ferry, because he does not make it a constant, regular business. There is the same distinction between a carrier and a common carrier, between one who may on occasions hire out his horse, and a liveryman, or one who may at times take pay for a meal or bed from a traveler, and an innkeeper. Perhaps this, then, is the true meaning of these statutes, taken together. A public ferry is open to all. Regular fare is established. The ferryman is a common carrier. He is bound to take over all who come, and he is bound to keep up, and in good order, his ferry, and he is held to strict liability. Such a right exists, not as appurtenant to his land, but is a franchise which needs the grant of the proper public authority. A private ferry is mainly for the use of the owner, and though he may take pay for ferriage, he does not follow it as a business. His ferry is not open to the public, at its demand. He may, or may not, keep it going, etc."

In a further reference to this act of 1850, this court, in the case of *Whelchel* v. *State*, 76 *Ga.* 650, said: "The act of 1850 grants authority to the owner of any land through which a stream may pass, on both sides thereof, to establish a ferry or bridge and charge toll. But the act should be construed strictly, and can not be extended to embrace any man who buys the right to land a bridge or abut it on both sides of the river. It is a mere privilege given the owner to pass from one side of the river to the other on his own farm by a private ferry or bridge, and as incidental thereto to pass others across the stream upon the payment of toll." It thus appears that the right of establishing a private ferry, under the code, is incident to the ownership of lands on both sides of the stream, and that the prime object in the establishment of a private ferry is to subserve the convenience of the owner of such lands; and while the owner may lawfully charge toll for persons crossing thereat, it must follow, in order to give effect to the intention of the legislature, that the number and frequency of such crossings may serve to divest such ferry of its private character, and thus

render its use unlawful, unless the owner receives from the authorities a grant to operate it as a public ferry. It can not be held that one may lawfully establish a private ferry and seek the business of the public. The provision of law which allows the establishment of a private ferry will not be enlarged by construction so as to authorize the owner to enter into the business of carrying the public, or any considerable portion thereof, across the stream on which it is located. Its operation must be confined to the legitimate purposes for which it was authorized to exist, and when crossings are made by the public as a rule, and not as the exception, the ferry ceases to be a private one under the statute, and can not lawfully be operated without a grant from the public.

. 3. It very plainly appears that the defendant Hall had no grant to operate a public ferry. It further appears by his answer that, notwithstanding this want of authority, he claims the right to establish and operate such a ferry, and if this be not conceded, he further claims the right to establish a private ferry for the express purpose of having a considerable part of the public to cross at such ferry. He had no right to establish a public ferry, nor a private one for the use of the public; and while the judge restrained him from operating a public or private ferry at a particularly indicated place, the injunction should have gone further and restrained him, not only from establishing and maintaining a public ferry, but also from establishing and maintaining a private ferry for the use of the public. The judgment is therefore

*Affirmed, with direction. All the Justices concurring.*