RAMSEY *v.* NEVILLS.

Opinion delivered March 4, 1918.

FERRIES—OPERATION BY NUMBER OF PERSONS FOR THEIR OWN USE—RIGHT OF LICENSED FERRYMAN—INJUNCTION.—Where a number of persons organize a company and operate a ferry for their own use

across a navigable stream, the operation of the same should be enjoined at the suit of one operating a regularly licensed ferry at the same point.

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*D. S. Plummer,* for appellant.

The rights of the licensed ferry were infringed by this company ferry, and injunction should issue. Kirby's Digest, § 3575; 20 Ark. 561; 44 *Id.* 184; 56 S. W. 167; 49 L. R. A. 248; 33 *Id.* 536; 17 S. W. 884; 65 Am. Dec. 535; 94 Ark. 190.

SMITH, J. Appellants operated a regularly licensed ferry over the St. Francis River at Phillips Bayou, Arkansas, and brought this suit to enjoin an alleged infringement of their franchise. It was shown that about twenty men organized themselves into what was called a company and bought a boat. One hundred and forty dollars, in money was raised for this purpose and paid to one Tom Nevills for a boat which he owned. These men, including Nevills, also paid a monthly fee of fifty cents, which was used in paying a colored man named Kelly to operate the company ferry. The licensed ferry and the company ferry used the same landings. Kelly, the ferryman, testified that the ferry was operated for the exclusive benefit of the company and that under the instructions to him no one was charged ferriage; but he also stated that he ferried without charge "all of a member's brothers, aunts, uncles, sisters and cousins," and he also testified that this arrangement included the employees of members of the company. That neighborhood is sparsely settled and as a result of this arrangement most of the ferrying was done by the company ferry, and it was shown that the licensed ferry, through loss of patronage, was operated at a loss to its owners.

The suit was defended upon the theory that each member of the company was but doing his own ferrying, and the court accepted this view and refused to enjoin

the operation of the company ferry, and this appeal has been prosecuted to review that action.

Our statute provides that where a ferry franchise has been granted, a similar franchise shall not be granted to any one else within a mile along the stream, and in the case of *Hunter* v. *Moore,* 44 Ark. 184, the court had occasion to consider what ferrying would constitute an infringement of this franchise. The court there said that the grant of this franchise did not take away from the citizens within the prescribed limits any right which before that he had of common right, and that one may keep his own boat upon a navigable stream with which to do his own ferrying without liability to any ferry owner. Attention was called in the opinion to the fact that there was no evidence of any confederation amongst the owners of this boat and other boats sought to be enjoined, nor of any compensation ever taken, nor of any offer to the public for free use in passage; but it was there also said that it was not necessary to decide whether or not any or all of those things would be considered as impairing the franchise under the facts of that case. In upholding the right of any citizen to do his own ferrying, the court said that the exercise of this right did not impede the exercise of a ferry franchise in another or impair its value, and that the value of the franchise depends upon the right to transport such of the general public as may use the convenience, and not upon any right to compel those to use it who did not require it.

The Supreme Court of California, in the case of *Vallejo Ferry Co.* v. *Solano Aquatic Club,* 165 Cal. 255, 131 Pac. 864, upheld this right upon the part of the citizen, and, in doing so, said that any loss of patronage resulting therefrom to the owner of the ferry franchise was *damnum absque injuria.* That court, as well as our own and a number of others, has given the reasons for the grant of the exclusive privilege of ferrying to the owner of the franchise. It is because of the service which the public exacts in consideration thereof and the bond required for the performance of these services. The ferry-

man must stand ready, subject to such reasonable regulations as are prescribed, to serve the public and to serve all alike. Competition might make the ferry unprofitable and its maintenance impossible and competition is, therefore, excluded.

In the California case, *supra,* it was urged that what one man may do, many may do in combination. But the court pointed out that this maxim or phrase of the law, like many others of a similar nature, had its well-defined limits, and that it was not always nor universally true that what one may do many may do in combination, but that it was only those things which work no invasion of rights, when done in combination, that may be so done. The court used the illustration of a grocer fixing the price of his goods at a given figure, which it is said he might lawfully do, but that, if he entered into combination with other merchants for the same purpose, an act was committed which was forbidden by law; and the court there said that, while any citizen could use his own boats within the limits of a ferry for his own purposes, the combination of many persons for this purpose would constitute an unwarranted ferry system for the many and would be in violation of the franchise of a ferryman. This California case is thoroughly well-considered and is found annotated in volume 33, Am. & Eng. Ann. Cases, page 1197.

The case of *Warren* v. *Tanner,* which is annotated in volume 49 L. R. A., page 248, is strikingly similar, under the facts, to the instant case. Mr. Justice White, speaking for the Kentucky Supreme Court in that case, said:

"In the case at bar some sixty-odd persons combine and establish for themselves a ferry, hire a common ferryman, and, presumably, pay equally for the whole expense. In our opinion, this is but a device resorted to to avoid the payment of ferriage at appellees' ferry; and this is not one of the rights of the citizen, reserved for himself and family, to cross and recross, or to the free navigation of the river. We are of the opinion that this common ferry established, though used by appellants exclusively for themselves and families, is a violation of the exclusive

grant of the privilege granted to appellees, and is such a violation as will be enjoined.''

Another case quite similar to the case now under consideration is that of *Blanchard* v. *Abraham*, 40 So. 379. There a number of subscribers, for their own purpose, had purchased a boat and employed a ferryman to operate it. In holding that this arrangement constituted a violation of the ferry franchise, the Supreme Court of Louisiana there said:

''A combination to cross a large majority of the former patrons of plaintiff's ferry can not be assimilated to the case of an individual crossing himself and family or a few friends or neighbors as a matter of accommodation.'' And the operation of the company ferry was there enjoined.

Upon the authority of these cases, as well as upon a consideration of the principles involved, we are led to the conclusion that the arrangement under which the company ferry was operated constituted an infringement upon the plaintiff's ferry franchise, and the operation of this company ferry should, therefore, have been enjoined. The decree of the court below will, therefore, be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.