It follows that the motion for rehearing will be denied.

---

ST. PAUL FIRE & MARINE INSURANCE COMPANY *v.* HARRISON.

Opinion delivered October 13, 1919.

FERRIES — PUBLIC FERRY.— Appellee owned a boat which he used for the transportation of himself and his teams across a river. He did not hold himself out as operating a public ferry, and while he and his ferryman often transported others across the river he never made any charge therefor. *Held,* the appellant did not operate a public ferry.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*Crawford & Hooker,* for appellant.

The evidence clearly proves that C. C. Harrison was at the time of the injury complained of a public ferryman within the purview of the law and as such liable as a common carrier for the loss. 26 Ark. 3. Custom also had made it a public ferry and our statute made it a public ferry, as it was over a navigable stream. Kirby's Digest, § 3556. The court, by its instruction and modification, nullified our statute by its modification. See Kirby's Digest, § 3556; Acts 1913, Act No. 50, and 26 Ark. 3; 31 Ark. 219-221; 50 *Id.* 404. In view of the error in the law and the case being now fully developed, judgment should be entered here for the appellant.

*Nixon, Levine & Nixon,* for appellee.

The only question is, was it a public ferry under the evidence? This was submitted to a jury under proper instructions and their verdict is conclusive. The authorities cited by appellant settle the law and the verdict settles the facts and the judgment should be affirmed. 31 Ark. 219; 42 Ga. 528.

SMITH, J.   The issue in this case appears from an instruction numbered 1, requested by appellant, reading as follows:

"1.   This is an action in which it is alleged that one J. S. Graham was the owner of an automobile, that it was insured under a policy of insurance of the plaintiff, St. Paul Fire & Marine Insurance Company, for the sum of one thousand dollars; that the defendant C. C. Harrison was the owner of a public ferry in Jefferson County, Arkansas, known as Greenback Ferry; that on the date mentioned in the complaint the owner of said automobile, J. S. Graham, secured passage for his automobile on the ferry boat of the defendant C. C. Harrison; that while crossing the river the said boat was capsized and the said automobile lost and destroyed.   That thereupon the plaintiff was compelled to and did pay to the said J. S. Graham the amount of its policy, towit, one thousand dollars, taking his receipt therefor and an assignment of the policy of insurance, and this suit is brought by the plaintiff under the said articles of subrogation. You are instructed that the owner of a public ferry is a common carrier and as such an insurer of the property committed to its care against all loss or damage not occasioned by the act of God or the public enemy.   If you believe that the defendant, C. C. Harrison, was the owner of the ferry in question, and that said automobile was placed on said ferry boat, in the custody of the defendant, his agent or employees, and said automobile lost or destroyed, and that plaintiff paid the amount of its policy to the said Graham, as in said complaint alleged, then your verdict will be for plaintiff in such sum as the proof shows it has been damaged, which in this case will be the amount paid out under the policy of insurance, with interest thereon from the date of its payment at the legal rate."

The court gave this instruction after modifying it by adding after the phrase, "If you believe that the defendant C. C. Harrison was the owner of the ferry in question," the words, "and same was operated as a pub-

lic ferry," exceptions being duly saved to this modification. It is insisted that under the undisputed testimony the modification was erroneous and prejudicial.

It is unquestionably true that there was sufficient testimony to have supported a finding that the ferry was a public ferry, as a number of citizens stated that they had frequently crossed at this ferry and always paid the negro ferryman who operated it the sum of fifty cents. But we do not think the undisputed testimony establishes the fact that the ferry was a public one. Appellee testified that his family resided in Pine Bluff, where his daughter went to school, and that he was in Pine Bluff frequently and that it was necessary for him to cross the river to go there and that there was no public ferry and that for his own convenience as well as that of his neighbors he put in a small private ferry. That he did not install the ferry for profit; that he had never fixed any ferriage charges nor made any charge for ferriage. That the ferry was operated by a colored man ordinarily, although he himself occasionally propelled the ferry boat across the river with a gasoline launch, while the colored man operated the ferry by hand with the aid of a cable stretched across the river. That this colored man was not authorized or permitted to make any charge for ferriage, although he was permitted to accept gratuities or tips, and it was shown that these tips ran from ten to seventy-five cents and averaged about fifty cents, and that most people in crossing gave the colored man half a dollar.

It was shown that appellee himself in operating the ferry had been tendered ferriage, which was always refused. He did admit, however, that he had ferried some doctors from Pine Bluff who were visiting patients in that neighborhood, who gave him drinks of whiskey; but this was a mere amenity of the occasion.

Appellee had never applied for ferry license and no attempt had been made on the part of the officers of the county to collect the license fee required by law for all public ferries.

ARK.] St. Paul F. & M. Ins. Co. *v.* Harrison.    161

Section 3555 of Kirby's Digest provides that, "All ferries upon or over any public navigable stream shall be deemed public ferries."

The appellant says this statute makes appellee a public ferryman, and, therefore, liable as a common carrier. The statute of which the section quoted is a part gives ferrymen there referred to the exclusive right of franchise to operate a ferry within a certain distance of his ferry; but, in construing the nature and extent of this right in the case of *Hunter* v. *Moore,* 44 Ark. 184, this court said that this franchise did not take away from a citizen within the prescribed limits any rights which before that he had of common right and that one might keep his own ferry upon a navigable stream with which to do his own ferrying, this upon the theory that such a citizen was not operating a public ferry.

We held, however, in the case of *Ramsey* v. *Nevills,* 133 Ark. 93, that when a number of persons organize themselves into a company and with common funds bought a boat and paid monthly dues to a ferryman to operate it the franchise of a neighboring ferry was being infringed, as the case of this company of individuals could not be assimilated to that of an individual doing his own ferrying. But there is no question here as to whether appellee's operation of his ferry would have constituted a violation of another's franchise to operate a ferry. A liability is sought to be imposed on him as a common carrier, which liability exists in the event only that he was operating a public ferry.

In Black's Law Dictionary a ferry is defined as "A liberty to have a boat upon a river for the transportation of men, horses and carriages with their contents, for a reasonable toll. The term is also used to designate the place where such liberty is exercised." The same author draws the following distinction between a public and a private ferry: "A public ferry is one to which all the public have the right to resort, for which a regular fare is established, and the ferryman is a common carrier, bound to take over all who apply, and bound to keep

his ferry in operation and good repair. *Hudspeth* v. *Hall*, 111 Ga. 510, 36 S. E. 770; *Broadnax* v. *Baker*, 94 N. C. 681, 55 Am. Rep. 633. A private ferry is one mainly for the use of the owner, and though he may take pay for ferriage, he does not follow it as a business. His ferry is not open to the public at its demand, and he may or may not keep it in operation. *Hudspeth* v. *Hall, supra.''

Applying the test there stated, we think the testimony set out above warranted the jury in finding that appellee did not operate a public ferry, and the decree of the court below is, therefore, affirmed.