## MITCHELL COUNTY *et al. v.* HUDSPETH.

1. Where an equitable petition alleged that the plaintiff was the owner of land on both sides of and abutting a navigable river, and that the county authorities on each side of the stream joined in proceedings to condemn a certain amount of plaintiff's land under the Civil Code (1910), § 5206 et seq., for the purpose of building a public free bridge across the river, and laying out public roads on each side thereof as approaches thereto, and where there was no compliance with § 640 et seq., of the Civil Code of 1910, and the plaintiff prayed for injunction, damages, etc., the court did not err in overruling a general demurrer to such petition.

(a) A court of equity, having jurisdiction of the case for the purposes of the injunction, will retain jurisdiction in order to ascertain whether damages, if any, have been sustained by the plaintiff, and that complete equity may be done, and in order to avoid a multiplicity of suits, etc.

2. Where one has land abutting on both sides of a navigable river on which she maintains and operates a public toll ferry, and has other land adjacent thereto which is sought to be condemned by the county authorities of two counties, each of which lies upon opposite sides of the river, and the owner has filed an equitable petition against both the counties jointly, to enjoin them from proceeding to condemn her land under § 5206 et seq. of the Civil Code of 1910, and for the recovery of damages by reason of the taking of her land for the purposes of building roads thereon and building a public free bridge across such

stream, and the approaches thereto; it is proper, in order to arrive at just and adequate compensation in determining the value of such adjacent land taken for the bridge and roads, that its prospective value as a bridge site and its present value as a ferry site may be taken into the calculation.

Nos. 2366, 2367. AUGUST 10, 1921. REHEARING DENIED SEPTEMBER 15, 1921.

Equitable petition. Before Judge Wilson. Mitchell superior court. November 6, 1920.

Mrs. Sarah A. Hudspeth filed a petition against Mitchell County and Baker County, having for its purpose the recovery of damages, and for injunction. The petition alleged, in substance, as follows: The plaintiff is the owner of a tract of land on both sides of Flint river at Newton, Georgia. The river is the dividing line between the Counties of Mitchell and Baker. As owner of the lands the plaintiff, and those under whom she claims title, have maintained and continuously operated a public toll ferry across the river at Newton in connection with the ferry road which during said period of time connected with the public roads in Mitchell and Baker Counties, which were worked and maintained by the counties for over thirty years. No bridge or other ferry has been operated over the river within three miles during any of said time, except that a ferry was established at a point about 200 yards down the stream from plaintiff's ferry about twenty odd years ago, and the same was operated from time to time for about three years, but has not been operated since that time. The ferry and franchise owned by plaintiff has a value of $20,000, and yields to plaintiff an annual income of $1200 over and above the cost of operation. In 1919 Mitchell County and Baker County, acting through their duly constituted authorities having charge of the roads and revenues of those counties, respectively, agreed to establish and maintain over the Flint river at Newton a county-line bridge including approaches thereto on each side of the river, the approaches to connect with the public roads of the counties on each side of the river. It was arranged between those counties and the State Highway Board of Georgia that State aid should be given to the counties in the construction of the bridge and its approaches, and that the same would then become a part of the system of State-aid roads of Georgia, with all the rights and liabilities of the counties and the State Highway Board as fixed by the laws of Georgia. On February — 1920, each of the defendants issued and published in

the official gazette of each county advertisements for bids for the building of the bridge and its approaches, as set out in the notice to bridge contractors, copy of which was attached to the petition. Pursuant to the foregoing it was arranged that the bridge and its approaches should be built by a bridge contractor, and the contract was duly entered into by the counties and the contractor acting for both of the counties. Pursuant to the contract the defendants, on May 1st, 1920, by and through the contractor (the St. Louis Structural Steel Co. Inc.), entered upon the lands of the plaintiff for the purpose of building thereon the bridge and its approaches, and took exclusive possession of certain described portions of the plaintiff's lands. The defendants, through the contractor, continued to hold exclusive possession of the lands described, and cleared from the same all trees and underbrush, and have been placing thereon the bridge and its approaches, a great part of the foundation of the bridge and its approaches having been completed. Plaintiff did not consent, but objected to the taking of her land without being compensated therefor; but she made no effort to prevent the taking of the lands by force or legal proceedings, because she knew that both of the defendants were solvent and liable to respond in damages to the plaintiff for the amount of damages done her by the taking of her lands. She has been injured and damaged in the amount of the value of the land taken, which, considering its value as a bridge site and ferry site and for other purposes, is and was at the time of the taking of the value of $25,000; and excluding from consideration its value as a bridge site and ferry site, it is and was at the time of the taking of the value of $500. The establishment of the public bridge and approaches will entirely destroy the value of her ferry and its franchise; and she sues for the damage thereby inflicted on her, as well as for the value of the land taken from plaintiff. She therefore prays for judgment against the counties jointly, for the sum of $24,500, being the damage done to her by the taking of the land and the establishment and operation of the bridge, considering the value of the land as a bridge site and ferry site exclusive of its other value, and for the further sum of $500 as the value of the land exclusive of its value as a bridge site and ferry site. On July 27, 1920, plaintiff was served with notice by the State Highway Board, pursuant to § 5206 et seq. of the Civil Code of 1910, of its determination to

construct and maintain a State-aid road from Camilla in Mitchell County to Newton in Baker County, the road to extend over the lands owned by plaintiff, and that the State Highway Board proposed to acquire title by condemnation proceedings " in accordance with the laws of Georgia." It is alleged that the attempted condemnation proceedings are illegal and improper for a number of reasons, one of which is, that, the defendants having already taken possession of the land of plaintiff, sought to be condemned by the exercise of eminent domain, the power to proceed and have the damages assessed as provided in the laws of Georgia with reference to the exercise of the power of eminent domain has been waived and lost by the counties, and therefore no longer exists in their agent, the State Highway Board. The law in reference to the exercise of the power of eminent domain provides apparently that the proceedings for the assessment of damages, including the appeals to the superior court, shall be, as to each piece of property sought to be condemned in different counties, had in the separate counties where the separate pieces of property are located; and this would result, if the condemnation proceedings were allowed to continue, in harassing the plaintiff with a multiplicity of suits, viz., a suit in Baker County for damages done by the taking of her property there, and a separate and independent suit in Mitchell County for the taking of her property in that county; whereas the two Counties of Mitchell and Baker having joined in their act of appropriating the property of plaintiff as a whole in both counties, acting through a common agent, the plaintiff has the right to hold the two counties liable for the amount of damage done by the joint act as joint tort-feasors, and she has a right to sue them jointly in one suit, so as to have the whole matter of damages adjudicated in one action; and therefore the proceedings for separate condemnations of plaintiff's separate pieces of property should be enjoined because they are illegal, and in order to avoid a multiplicity of suits. The value of plaintiff's land taken by the defendants on each side of the river, and especially its value as a bridge site and as a ferry site, is an indivisible unit, the value of which can not be ascertained by considering the land taken on either side of the river separately, nor is there any method or rule of law by which the two separate tribunals assessing damages separately in each county, under condemnation proceedings, could be required to con-

sider the damage done plaintiff on the whole by taking the lands considered in connection with their value as a bridge site or a ferry site and by the destruction of plaintiff's ferry franchise, nor is there any method or rule of law by which the separate tribunals could be made to apportion properly the damages as between the two counties, so as to fix the amount thereof for which each county is liable to plaintiff; and for these reasons there could be in this case no proper application of any adequate and proper measure of damages for the injury done to plaintiff by the acts of the defendants, if the same are considered in two separate tribunals under the condemnation proceedings; and therefore, if the condemnation proceedings are allowed to proceed, plaintiff's remedy at law would be inadequate and incomplete. Unless equitable relief prayed for by her is granted, her damages will be irreparable. Her prayers are for damages, and for injunction against the condemnation proceedings.

The defendants demurred to the petition as amended, both generally and specially. The court overruled the general demurrer and all the grounds of the special demurrer but one (paragraph 5), which was sustained. This paragraph appears in the opinion. To the judgment overruling the general demurrer the defendants excepted; and on the judgment sustaining paragraph five of the special demurrer the plaintiff in her cross-bill of exceptions assigns error.

*Benton Odom* and *A. S. Johnson,* for Mitchell County et al.
*Pope & Bennet,* contra.

Hill, J. (After stating the foregoing facts.)

1. In the main bill, exception is taken to the overruling of the general demurrer only. It is insisted that the plaintiff was afforded an adequate remedy at law for the enforcement of whatever rights she may have had under the eminent-domain act of 1894, as embraced in § 5206 et seq. of the Civil Code of 1910. It is further insisted that inasmuch as the condemnation proceedings had already been instituted under the act of 1894, they should continue, and therefore that the present petition should have been dismissed in the court below. Equitable relief in the nature of an injunction is prayed against the condemnation proceedings. There can be no question, under the allegations, that the defendants are endeavoring to take plaintiff's land without just and adequate com-

pensation having first been paid; and unless the plaintiff has an adequate remedy at law, then the general demurrer should have been overruled, so far at least as the petition set out a cause of action for injunction. We are of the opinion that the eminent-domain act of 1894 as embodied in the Civil Code, § 5206 et seq., does not apply to the condemnation of a road and bridge site on the lands of another. In the case of *Hutchinson* v. *Lowndes County,* 131 *Ga.* 637 (3) (62 S. E. 1048), it was held that " The provisions embraced in the Political Code, §§ 520-525, inclusive [now·§§ 640 et seq. of the Civil Code of 1910], were not repealed by the act of 1894, embodied in the Civil Code §§ 4657 et seq. [now §§ 5206 et seq.] or by the act of 1900 (Acts 1900, p. 66)." It seems, therefore, that in condemning land for the establishment of a public road the counties have no right to proceed under section 5206 et seq., but must proceed under section 640 et seq. Section 640 provides that " On application for any new road, or alteration in an old road, the ordinary shall appoint three road commissioners, residing as near where such road is intended to pass as possible; and if they find it a public utility, they must proceed to mark it out, and make their report under oath to such ordinaries that it was laid out and marked conformably to law." In the case of *Ainslee* v. *Morgan County,* 151 *Ga.* 82 (105 S. E. 836), this court held, under the facts of that case, that " It was error for the court to refuse to enjoin the county authorities from proceeding to condemn the land; there having been no compliance with § 640 et seq. Civil Code 1910. *Warren County* v. *Todd,* 150 *Ga.* 690 (104 S. E. 906)." In that case Morgan County, through its board of commissioners of roads and revenues served upon Mrs. Ainslee a notice of its purpose to condemn a certain strip of land across her property, to be used for the construction of a public road. Mrs. Ainslee filed a petition seeking to enjoin the county and the individuals constituting the board of commissioners from proceeding with the condemnation, alleging that it was the intention to use the property (condemnation of which was sought) for the purpose of changing the location of an existing road; that the change was unnecessary; that it would result in the destruction of a number of valuable shade-trees and injury to petitioner's property for residence purposes; that no offer of compensation had been made to petitioner, etc. The defendants denied all the material allegations of

the petition, and averred that they had endeavored to reach an agreement with the plaintiff as to the price to be paid her for the land, but were always informed that she would not sell any land to the county, etc. After hearing evidence both for the plaintiff and the defendant, and after it was agreed in open court that the commissioners had not complied with § 640 et seq. of the Civil Code, the court refused to grant an injunction, holding that the county authorities were authorized to proceed under § 5206 et seq. of the Civil Code. The plaintiff excepted to the judgment refusing an injunction, and this court reversed the judgment of the lower court, as set out in the headnote above quoted. We think the principle ruled in the *Ainslee* case is controlling here, and that the defendants could be enjoined from proceeding to condemn plaintiff's land under § 5206 et seq. of the Civil Code. We think also that defendants have an available remedy to condemn land for road purposes, under § 640 et seq. of the Civil Code of 1910, if they see fit to avail themselves of it. But the court, clearly having jurisdiction of this case for the purpose of enjoining the illegal condemnation proceedings, can retain jurisdiction also for the purpose of determining the amount of damages sustained by the plaintiff, if any; and in order likewise to avoid a multiplicity of suits, etc.

While it is not alleged that the counties have actually opened up the road through the plaintiff's lands on both sides of the river, and have completed the bridge, and that the bridge and road are now in actual use by the public, the petition does allege that the counties have actually taken the right of way and bridge site and have partially completed the road and bridge. The counties, having actually taken plaintiff's land, are liable to plaintiff for the value thereof. The counties can not retain plaintiff's land without paying her therefor; and while the counties, as ruled above, are not authorized to condemn land under the Civil Code, § 5206 et seq., nevertheless the plaintiff may maintain the suit for the recovery of the value of the land, or easement therein actually taken and appropriated by the counties for the purposes and in the manner set out in the petition. We do not hold that the counties may not, under proper pleadings, reserve the right to decline payment of the damages finally fixed, and to abandon the road and bridge. In the circumstances of this case, the burden is upon the counties

to have the decree so molded as to permit them to decline to open the road as a public road and to be relieved from the payment of damages for the value of the right of way and bridge site, in the event they shall determine that the damages " transcend the utility of such road." Compare Civil Code, § 687. The counties could not relieve themselves of the damages, if any, occasioned by the trespass, by abandoning the road; but nothing here ruled is to be construed as holding that the county authorities may not, by proper pleadings, be left by the decree free to abandon the road and to decline to pay the damages finally assessed for the value of the plaintiff's land.

2. The court sustained paragraph 5 of the defendants' special demurrer, which in part was as follows: " In the 15th paragraph [of the petition] the words ' which, considering its value as a bridge site and a ferry site and for other purposes, is and was at the time of such taking of the value of $25,000, and ' on the ground that (*a*) said words and allegations are irrelevant, and constitute no element of any cause of action in favor of plaintiffs against these defendants, and (*b*) they present a claim and measure of damages which is illegal and not allowable under the law, and which plaintiff is not entitled to, and which should not be considered in estimating plaintiff's damages." The plaintiff in her cross-bill of exceptions excepted to this ruling of the court. We think that the court erred in sustaining this special demurrer. Section 781 of the Civil Code of 1910 provides that " In determining the value of land taken for a bridge, its prospective value as a bridge site and its present value as a ferry, if one is in use, may be taken into the calculation." Under the allegations of the present petition the land taken by the defendants from the plaintiff was for the avowed purpose of building a free bridge, and the approaches thereto, across the Flint river, and for this damage to her property she is entitled to just and adequate compensation; and in order to ascertain what this just and adequate compensation is, it seems to us, while the plaintiff has no exclusive right to establish and maintain a ferry on her land, as decided in *Hudspeth* v. *Hall*, 111 *Ga.* 510 (36 S. E. 770), yet the value of the land taken by the county as a ferry or bridge site, and the approaches thereto, together with all other facts and circumstances calculated to enhance or diminish the value of the property taken or damaged, may be inquired into.

In the case of *Dougherty County* v. *Tift*, 75 *Ga*. 815, Blandford, Justice, delivering the opinion of the court, said: "If Tift was the owner of the land through which this stream ran, on both sides, then, under the act of 1850, he had the right to erect a bridge over the same, and charge toll for crossing thereon; and whether the bridge be public or private, it belonged to Tift, and when the County of Dougherty takes his land and erects another bridge, which causes damage to Tift's property, he is entitled to just compensation therefor. Art. 1, sec. 3, par. 1, Constitution of Georgia; Code, section 5024. Whether the same is a public or a private bridge, the question in such case is, what damage has the party sustained; and to ascertain this, the cost of erection, the income derived from the bridge, may be looked to and considered by the jury, together with all other facts and circumstances calculated to enhance or diminish the value of the property taken or damaged." The Civil Code, § 688 provides: "In estimating the value of land when taken for public uses, it is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." We are of the opinion that the plaintiff may show the value of her land for any legitimate purpose to which the land could be appropriated, including its value as a bridge site, and as a ferry, if any; and that the court therefore erred in sustaining the above portion of paragraph 5 of the defendants' special demurrer; but in so far as such demurrer above dealt with was directed at paragraph 16 and a part of paragraph 17 of the petition, the demurrer was properly sustained, because in the two paragraphs last mentioned there are elements of damages set forth as a basis of plaintiff's claim which are not allowable under the law, as will be seen from what has been said above while dealing with the demurrer to paragraph 15.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*