18797, 18841, 18842.  WILLCOX *et al.* v. STATE HIGHWAY
BOARD; and *vice versa.*

DECIDED JULY 11, 1928.  REHEARING DENIED JULY 31, 1928.

*Gordon Knox, L. C. Harrell, Hal Lawson,* for plaintiffs in error.

*W. S. Mann, J. P. Highsmith, S. M. Smith, J. C. Bennett,* contra.

LUKE, J.  The State Highway Board of Georgia filed petitions in the superior courts of Telfair and Jeff Davis counties, for the condemnation of certain lands for a right of way for a State-aid road and for material to be used in constructing and building the road.  The record shows that the principal object of the condemnation proceedings was to procure a bridge site across the Ocmulgee river, with abutments therefor and approaches thereto.  The lands sought to be condemned on both sides of the river were jointly owned by J. Clyde Willcox and I. L. Cook, hereinafter called defendants.  The parties agreed to refer to a jury the issue as to the value of the land and the assessment and the fixing of the value of the land sought to be condemned.  The bridge was completed before the trial of this issue.  Upon the trial the evidence showed that on the lands sought to be condemned the defendants owned, and for several years had operated under a legally granted franchise, a public ferry across the Ocmulgee river, a navigable stream, for which as a legal right they charged toll; that the ferry was used

by the public, but that the defendants kept up the road for some distance from the river on each side thereof; that the principal value of the land to the defendants was because of the revenue derived from the operation of this ferry, which they exclusively possessed by virtue of their ownership of the land on each side of the river, and because of the particular adaptability of the land for a bridge site; that defendants operated the ferry until the completion of the bridge by the highway department; that the principal value of the land to the plaintiffs was for a bridge site and abutments of and approaches to a bridge across the river. There was evidence that the land sought to be condemned was the most available and economical place to put the bridge, and evidence of the land's value as a bridge site, of the value of the land with and because of the ferry and ferry rights, of the net income to the defendants from their operation of the ferry, and of the cost of the ferry to defendants. There was evidence that the value of the land for ferry purposes was destroyed by the construction of the free bridge by the highway board. There was evidence of the value of the land per acre without regard to the ferry, ferry rights, income derived from the ferry, or the land's particular availability as a bridge site, or the cost of the bridge. The evidence as to the value of the land, taking into consideration the ferry, the cost of the ferry, ferry rights, the income from the ferry, its availability as a bridge site, and the cost of the bridge, varied from $30,000 to $100,000. The evidence as to the value of the land by the acre for agricultural purposes, without regard to the above features, varied from $20 to $35 per acre. The jury rendered a verdict for $300 for the land in Jeff Davis county, and $162.50 for the land in Telfair county. Willcox and Cook filed motions for a new trial, which were overruled, and they excepted. In the Telfair-county case the highway board filed a cross-bill of exceptions, complaining of the admission of specified evidence and of the charge of the court.

The charge of the court in each case was substantially the same, except that in the Jeff Davis case the court charged at the request of the condemnee as follows: "Whatever the time fixed upon with reference to which the compensation shall be estimated, the owner is entitled to the actual value of the land at that time; that is, in this case the actual value of the land at the time it was taken, even though it may have been enhanced by reason of the projected im-

provement for which it was taken. That is not really making the condemning party pay for an enhancement from the mere projection of the work, but from the existence of circumstances which create a demand for the work and render it probable that such a work will sooner or later be built. In so far as the enhancement is due to such circumstances, no doubt it is properly considered and allowed." The errors assigned, when summed up, all go to the method of arriving at the damages sustained by the defendants by reason of the peculiar value to them of the land taken, as for ferry purposes and for bridge site. The amounts of the verdicts in the respective cases are each averred to be so small as to be the result of gross mistake, etc. From a careful examination of all the evidence, it must be said that each verdict shows on its face that the value of the land for ferry purposes and its value as a bridge site were not taken into consideration by the jury. Where damages are "so small or so excessive as to justify the inference of gross mistake or undue bias," the court is permitted to interfere. Civil Code (1910), § 4399; *Dougherty County* v. *Tift,* 75 *Ga.* 815 (3) ; *Anglin* v. *City of Columbus,* 128 *Ga.* 469 (57 S. E. 780).

When this case was before the Supreme Court (*Cook* v. *State,* 162 *Ga.* 84, 97 (132 S. E. 902), that court held that the Highway Board had the right to condemn property for road purposes, and "the fact that the proper county authorities are required to furnish rights of way, free to the State Highway Board, does not prevent that board from condemning rights of way for State-aid roads whenever the county authorities fail or refuse to furnish said rights of way. This provision may make the counties liable for expenditures incurred by the State Highway Board in acquiring these rights of way; but it does not bar this board from proceeding to condemn rights of way." And in headnote 2 of that decision it was said: "Where the State Highway Board instituted a proceeding to condemn lands of the plaintiffs for the purpose of laying out a State-aid road and for securing approaches for the erection of a free public bridge across a navigable river, and where the plaintiffs had previously entered suit against certain counties to recover damages for taking and appropriating a right of way over their said lands for the same purposes, such condemnation proceeding *is no bar to the action for damages."* (Italics ours.) In other words, the right of the Highway Board to condemn pro bono publico

is undeniable, but this condemnation must not amount to confiscation. The words, "just and adequate compensation," as used in the decisions pertaining to such cases, are neither meaningless nor ambiguous. The records and the briefs of able counsel in these cases are voluminous and present many issues, some of which are collateral, but all of which have been given due consideration; but the main, controlling issue is whether or not the jury, in arriving at the value of the land and the damage sustained by the defendants by virtue of its condemnation, should have considered the ferry, ferry rights, cost of the ferry, income from the ferry, availability and desirability of the land for a bridge site, and cost of the bridge, or whether they should have valued the land by the acre for agricultural purposes without regard to these features, as was done. The value of land depends upon the use to which it may be put and the income which it will produce. Land may be particularly valuable by virtue of its particular location or its desirability for some particular purpose. In this event the owners are entitled to the benefit, and this has ever been the rule. Are these defendants required under the law to surrender a property that was yielding them before the completion of the free bridge approximately $1000 a month for the nominal sum of $462.50? Some of the decisions of the Supreme Court are apparently somewhat in conflict on this issue; but the oldest decisions, the latest decisions, and the code section now of force hold in effect that the owners of the land are entitled to "just and adequate compensation," and in determining what is just and adequate compensation, for the land, "its prospective value as a bridge site and its present value as a ferry, if one is in use, may be taken into the calculation."

In one of the earliest decisions on this subject, that of *Harrison* v. *Young*, 9 *Ga.* 359 (4), the court held: "The value of land taken for public use is not restricted to its agricultural or productive qualities, but enquiry may be made as to all other legitimate purposes to which the property could be appropriated." And in the opinion (pages 364, 365) the court said: "Counsel for the Harrisons then proposed to prove the value of the land seized and occupied by the company as a bridge site, and that the land for the western abutment cost the company $6000, and that the location on the eastern side of the river was worth equally as much, and insisted that the value of the land for this and all other legitimate

purposes was proper to be submitted to the jury, to enable them to estimate correctly the damages to be paid by the company. But this the court refused, and restricted the evidence to the actual value of the land for its agricultural and productive qualities. When land or any other property is taken for public use the owner is entitled to compensation for its whole value, not for this or that particular object, but for all purposes to which it may be appropriated. Suppose I have on my premises a waterfall admirably adapted to machinery, and a portion of my land is seized and applied to the erection of a bridge or the construction of a railroad, so as to render the water-power unavailable; in computing my damages ought not this fact to be taken into consideration? The value of land or anything else is its price in the market. Concede, then, that the right to erect this bridge is not in the Harrisons, but has been bestowed by the State upon this company, ought not the owners of the land to be paid for the worth of the site to the company? Who, in making investments of capital in real estate, is not influenced by the consideration that it will be valuable for a town, bridge, ferry, mill, manufacture, etc? We hold, therefore, that our brother Warren, who ruled this case below, was mistaken as to the law which regulates this branch of the investigation." The foregoing is the oldest case in point that we find, and it holds very emphatically that the owner is entitled to compensation for the whole value of the land, and that in arriving at such value all purposes to which the land may be appropriated should be taken into consideration. Under this decision, unquestionably the jury should have considered the value of the land in the instant case for ferry purposes and as a bridge site, and rendered a verdict accordingly.

At the second appearance of the *Harrison* case in the Supreme Court (*Young* v. *Harrison,* 17 *Ga.* 30 (1)), the court held: "Where the owner of a parcel of ground has been deprived thereof by an incorporated company, for the purpose of appropriating the same as a bridge site, and by virtue of a provision of their charter an appeal had been taken from the commissioners or appraisers to a jury, and the latter were called upon to award just compensation to the land owner: *Held,* that the value and damage, *at the time the land was taken,* was the thing to be ascertained; but to discover this, the jury was authorized to look to the prospective value

of the property *as a bridge site,* and to take that into consideration also, in determining what it was *then* worth." (Italics ours.) And in the opinion (p. 38) the court said: "In such case, it would certainly be a great hardship, not to be tolerated in a free country, if a citizen owning a piece of land of this description, whose prospective value, derived from its situation as affording facilities for a bridge site, was *as much his property* as was its soil for planting purposes (it may, indeed, have been purchased with reference to such value), could be compelled to part with the same, and forced to give up his property in the prospective value of the ground, and receive only its value for agricultural purposes, or its value as a bridge site on the day when it is taken, estimated by the trade and travel which would that day have passed over it if the bridge had been built. Such could not be a case of just compensation." There was considerable evidence as to the prospective value of the land under consideration; and the land's facilities were as much the property of the owners as was the soil itself. When the *Young-Harrison* case again came to the Supreme Court, as reported in 21 *Ga.* 584, the court said (p. 589) : "The verdict should have been for the full value of the land at the time it was taken," and (p. 591) : "We would advise that the witnesses be examined simply and directly as to the *whole worth* of the land taken from the Harrisons by the Irwinton Bridge Company, and *for all purposes to which it may be appropriated."* (Italics ours.) In the case of *Dougherty County* v. *Tift,* 75 *Ga.* 815, the 2d headnote is as follows: "If a person owning land on both sides of a stream built a bridge across it for the use of the public, and charged tolls under the act of 1850, such a bridge was a public bridge; but whether it was a public or private bridge, if the county in which it is situated proceeds to take the land of such property owner and to erect another bridge, which causes damage to his property, he is entitled to just compensation; and to ascertain this, the cost of erection and the income derived from the bridge, together with all the other facts and circumstances calculated to enhance or diminish the value of the property taken or damaged, may be looked to." In the case under consideration Willcox and Cook owned the land on both sides of the stream, and there was ample evidence of the cost of their ferry and the income derived therefrom, and that the building of the free bridge totally destroyed the value of the land for ferry purposes.

The highway board relies largely upon the case of *Hudspeth* v. *Hall,* 111 *Ga.* 510 (36 S. E. 770), in which it was held that if the authorities "grant the right to establish over the same stream such additional public ferries as the public convenience demands, and if the first grantee is injured by the establishment and maintenance of another public ferry, he has no right of action to recover damages therefor; it is damnum absque injuria." This decision, if conflicting, will not prevail as against older decisions of the Supreme Court, and especially the case of *Harrison* v. *Young,* 9 *Ga.,* supra. However, the Supreme Court in a later decision (*Mitchell County* v. *Hudspeth,* 151 *Ga.* 767, 108 S. E. 305), having fully in mind the *Hudspeth-Hall* case (reference thereto being made in the opinion), held that "Where one has land abutting on both sides of a navigable river on which she maintains and operates a public toll ferry, and has other land adjacent thereto which is sought to be condemned by the county authorities of two counties, each of which lies upon opposite sides of the river, and the owner has filed an equitable petition against both the counties jointly, to enjoin them from proceeding to condemn her land under section 5206 et seq. of the Civil Code of 1910, and for recovery of damages by reason of the taking of her land for the purposes of building roads thereon and building a public free bridge across such stream, and the approaches thereto; *it is proper, in order to arrive at just and adequate compensation in determining the value of such adjacent land taken for the bridge and roads, that its prospective value as a bridge site and its present value as a ferry site may be taken into the calculation.*" And in the opinion in that case (pp. 774, 775), the Supreme Court said: "Under the allegations of the present petition the land taken by the defendants from the plaintiff was for the avowed purpose of building a free bridge, and the approaches thereto, across the Flint river, and for this damage to her property she is entitled to just and adequate compensation; and in order to ascertain what this just and adequate compensation is, it seems to us, while the plaintiff has no exclusive right to establish and maintain a ferry on her land, as decided in *Hudspeth* v. *Hall* [supra], yet the value of the land taken by the county as a ferry or bridge site, and the approaches thereto, together with all the facts and circumstances calculated to enhance or diminish the value of the property taken or damages, may be inquired into. In the case of *Dougherty County*

v. *Tift*, 75 *Ga.* 815, Blandford, Justice, delivering the opinion of the court, said: 'If Tift was the owner of the land through which the stream ran, on both sides, then, under the act of 1850, he had the right to erect a bridge over the same, and charge toll for crossing thereon; and whether the bridge be public or private, it belonged to Tift, and when the county of Dougherty takes this land and erects another bridge, which causes damage to Tift's property, he is entitled to compensation therefor. Art. 1, sec. 3, par. 1, Constitution of Georgia; Code, § 5024. Whether the same is a public or private bridge, the question in such case is, what damage has the party sustained; and to ascertain this, the cost of erection, the income derived from the bridge may be looked to and considered by the jury, together with all other facts and circumstances calculated to enhance or diminish the value of the property taken or damaged.' The Civil Code, § 688, provides: 'In estimating the value of land when taken for public uses, it is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated.' We are of the opinion that the plaintiff may show the value of the land for any legitimate purpose to which the land could be appropriated, including its value as a bridge site, and as a ferry, if any."

Surely this recent decision, written in the light of former decisions, and referring to some of them, is authority to guide us in this case. See *Mitchell County* v. *Hilliard,* 159 *Ga.* 502 (126 S. E. 719). Section 781 of the Civil Code says: "In determining the value of land taken for a bridge, its prospective value as a bridge site and its present value as a ferry, if one is in use, may be taken into the calculation." Let us not confuse the principle involved in these cases with that of the right of eminent domain. Of course, the public interest must be served, and Willcox and Cook must sell whether they would or not, and they can not demand an arbitrary, excessive sum for their property; but they are entitled to receive just and adequate compensation for their property or the damage they have suffered by virtue of its loss; and to hold otherwise would endanger the property rights of every free citizen within our Commonwealth.

We do not in the least doubt the soundness of the foregoing decisions upon which we base our decision in this case, but whether

they are sound or not, we are bound by them; and under them Willcox and Cook were entitled to recover the value of their land for "all legitimate purposes to which the property could be appropriated," and the jury should have taken into consideration the evidence of the availability of the land for a bridge site, the economy of placing the bridge at this place, the cost of the bridge, the income of the defendants from the ferry, the right of the defendants to operate the ferry, and the investment that the defendants had in the ferry. The jury having failed, as shown by their verdict, to consider this evidence, and the verdict being so small that it justified the "inference of gross mistake," the trial judge erred in overruling the motions for a new trial made by Willcox and Cook. Upon a retrial of these cases we suggest, as was done by the Supreme Court in the *Harrison* case, 21 *Ga.* supra (in the case here, by agreement, the only issue being as to value of land taken and damages sustained by the plaintiffs), that evidence be taken as to the whole worth of the land taken, and for all purposes to which it may be appropriated. In determining the value of the land and arriving at just and adequate compensation, its value as a bridge site and its value as a ferry site should be taken into consideration.

It is unnecessary to pass on those grounds of the motions for new trial which are not covered by the foregoing rulings. The court did not err in any of the rulings complained of in the cross-bill of exceptions.

*Judgment on both main bills of exceptions reversed; on cross-bill affirmed. Broyles, C. J., and Bloodworth, J., concur.*